In the Matter of TERRA MAR ASSOCIATES, and Dev Enterprises, Debtors.

**TERRA MAR DEVELOPMENT CORP., Plaintiff,**

v.

**TERRA MAR ASSOCIATES, Debtor, Defendant.**

**TERRA MAR DEVELOPMENT CORP., Plaintiff,**

v.

**DEV ENTERPRISES, Debtor, Defendant.**

**Bankruptcy Nos. 2–80–00091, 2–80–00092, 2–80–0068 and 2–80–0069.**

United States Bankruptcy Court, D. Connecticut.

March 31, 1980.

Richard W. Bowerman, New Haven, Conn., for plaintiff.

Steven M. Zelman, Hartford, Conn., for defendants.

*MEMORANDUM AND ORDER*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

A consolidated preliminary and final hearing held pursuant to § 362(d) of the Bankruptcy Code, has been concluded in this case. The plaintiff, Terra Mar Development Corporation, seeks relief from the stay imposed by 11 U.S.C. § 362(a) for the purpose of continuing a mortgage foreclosure action commenced May 19, 1978, in the Superior Court of the State of Connecticut.[1] Terra Mar Associates ("TMA") and Dev Enterprises ("DEV"), the defendants and debtors, are two partnerships which filed Chapter 11 petitions on February 1, 1980, in this Court. Ronald J. DeVito ("DeVito") is the principal and managing partner in both partnerships. The schedules show that TMA and DEV include one other partner.[2] During the latter part of 1976, DeVito, a

---

1. 11 U.S.C. 362(a) provides for automatic stays of most actions against a debtor or its property. By stipulation of the parties, the automatic termination of the stay under 11 U.S.C. § 362(e) has been advanced to April 3, 1980.

2. The schedules filed by TMA and DEV are identical in every respect and list the same assets and liabilities. The parties have treated TMA and DEV as one, and the Court will do likewise.

New York resident and attorney, negotiated with the plaintiff to purchase a large marina located in Old Saybrook, Connecticut, constructed in 1957 and known as the Terra Mar. The marina operations include a motel, restaurant, nightclub, tennis courts and swimming pools, as well as the usual docking slips. A sales agreement was executed and the property was purchased on January 31, 1977, in the name of Ramarret Enterprises, Inc. ("Ramarret"), a New York corporation organized by DeVito. The sale price was $650,000.00, but no cash was involved. Instead, the plaintiff accepted from Ramarret a note and mortgage for $650,000.00. The note provided for a waiver of interest accrual until June 1, 1978, a waiver of principal payments until July 1, 1978, and interest at the rate of 8½% per annum. The sales agreement called for Ramarret to make not less than $200,000.00 worth of improvements to the marina.

Shortly after the sale, Ramarret conveyed the premises to TMA for no consideration. In August, 1979, TMA conveyed a small portion to DEV. It appears that Ramarret, TMA, and DEV originally consisted of the same four persons.[3]

On July 12, 1977, TMA granted a $250,000.00 mortgage on the property to the Small Business Administration ("SBA"), an agency of the United States of America. A mortgage to DeVito, dated February 17, 1977, for $250,000.00 also appears of record.[4]

At the time of the sale on January 31, 1977, the plaintiff had to borrow money in order to pay delinquent real estate taxes due the Town of Old Saybrook.[5] Since that date, neither Ramarret, TMA nor DEV have paid any taxes to the Town of Old Saybrook, any principal or interest on the mortgage held by the plaintiff, on the mortgage held by the SBA or on the mortgage held by DeVito. The plaintiff's mortgage required that sufficient liability and fire insurance be maintained on the premises by Ramarret and that taxes be paid promptly. Ramarret and TMA failed to secure such insurance or to pay the town taxes, and the plaintiff commenced a foreclosure action on May 19, 1978, in the Superior Court for the Judicial District of Middlesex, Connecticut. On February 8, 1979, the Superior Court found the debt due the plaintiff, including costs, to be $703,484.93 and decreed a judgment of foreclosure by sale. The Superior Court judgment, however, delayed the sale for one year. The Committee, appointed by the Court to conduct the sale, was ordered to engage in extensive newspaper advertising, starting October, 1979, including advertisement in the Wall Street Journal and the New York Times. The sale was to take place on Saturday, February 2, 1980, at noon. Three disinterested persons, appointed by the Superior Court as appraisers, submitted an appraisal to that court on January 17, 1980, stating the value of the Terra Mar property to be $650,000.00. On January 4, 1980, the debtors sought an extension of the sale date, but the motion to so extend was denied by the Superior Court.

On February 1, 1980, the day before the sale, the debtors filed their Chapter 11 petitions in the Bankruptcy Court. The following day, this court modified the stay imposed by § 362(a) to allow the bidding process as ordered by the Superior Court to proceed, but all other actions to consummate a sale were to remain subject to the stay. A high bid of $640,000.00 was received at the public auction and a contract executed by the bidder to take title on or

---

3. The plaintiff raises a question as to the number of present partners of each debtor, despite the claim of DeVito that there are only two. In view of the Court's decision on other elements of this case, it is unnecessary to reach this issue. There is no question that at the outset there were four stockholders in Ramarret who became the four partners in TMA and DEV. DeVito testified that the debtors are presently being sued in New York by at least one of these original stockholders and partners for $1,000,- 000.00 and that this contingent liability was omitted from the schedules.

4. Although this mortgage is listed on the schedules filed by DeVito, he was unwilling or unable during the hearing to state whether or not that mortgage constitutes a valid encumbrance at this time.

5. The lenders of this money are now pressing the plaintiff for payment.

before April 28, 1980, subject to approval of the Superior Court and the U. S. Bankruptcy Court.

The adversary proceeding to modify stay was commenced by the plaintiff by complaint on February 7, 1980. Limited discovery was had, an answer filed, and hearing held on March 7 and 12, 1980.

11 U.S.C. § 362(d), under which this hearing has been held, states as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to effective reorganization.

11 U.S.C. § 362(g) provides that in a hearing under subsection (d), the burden of proof on the issue of the debtors' equity in property is on the plaintiff, and the defendants have the burden of proof on all other issues.

The plaintiff claims it is entitled to relief from the stay under *§ 362(d)(1)* for the following causes:

(1) a lack of adequate protection of plaintiff's interest in the Terra Mar property; (2) no reasonable likelihood that the debtors can be reorganized; (3) the petitions seeking reorganization were filed in bad faith; (4) the likelihood of material harm to the plaintiff; and (5) the "balance of hurt" weighs in favor of the plaintiff.

Plaintiff claims that it is entitled to relief from stay under *§ 362(d)(2)* because the defendants have no equity in the property

and the property is not necessary to an effective reorganization.

The defendants claim that there can be adequate protection for the plaintiff, that the defendants have equity in the property, and that the property is necessary for a successful Chapter 11 reorganization.

One element that is common to all of these claims is the question of whether equity exists for the defendants in the property, and the Court will address that issue first. The plaintiff presented the following evidence as to the encumbrances which have been placed against the property. The tax collector of Old Saybrook testified that the unpaid real estate taxes total $62,-104.19. An officer of the plaintiff testified that the plaintiff was owed on its first mortgage a total of $782,134.22. This amount included reasonable costs of foreclosure and interest to date. An official from the SBA appeared in court to verify that the sum due on its second mortgage is $301,819.56.[6] The DeVito mortgage is listed in the debtors' schedules in the principal amount of $250,000.00. The total of the foregoing comes to $1,396,057.97. The filed schedules also list encumbrances disputed by the debtors totaling $46,650.85. These encumbrances include judgment liens and mechanic liens filed against the property.

TMA and DEV in their schedules place a valuation of $1,300,000 on the real estate. Thus, based solely on what the debtors have certified on their schedules, there is no equity in the property for the debtors.[7] That aside, the debtors presented an appraiser, John F. DeLucco, who valued the premises at $1,680,000.00. This valuation was primarily based on a method of appraisal utilizing a capitalization of income from the property. However, Mr. DeLucco admitted that he had no information as to the past experience of expenses and revenues in the operation of the Terra Mar. Mr. DeLucco testified he used an estimate of what reve-

---

**6.** DeVito claimed that the SBA had waived the accruing of interest. The SBA official denied any such action was reflected in his file and that the loan was in default.

**7.** The schedules of assets and liabilities filed with a petition are certified true and correct to the best of the declarer's knowledge, information and belief, under penalty of perjury. *Interim Bankruptcy Rule 1002.*

nue and expenses in his opinion should be, rather than what they had been, to arrive at a current market valuation. He further stated his valuation dependent upon the marina being given the "right exposure."

As previously noted, the three disinterested persons appointed by the Superior Court filed an appraisal in January, 1980, finding a value of $650,000.00 for the property. Norman Benedict, an appraiser called by the plaintiff, testified to a valuation of $670,000.00 for the Terra Mar. He stated that he used the comparable sales approach to arrive at this figure. The written appraisal made by him contains an extensive analysis of similar marina sales, which was utilized to arrive at a valuation of the Terra Mar in its present condition. Old Saybrook has recently undergone a townwide revaluation of all property, and the property's current assessment indicates a fair market value of $755,400.00. The plaintiff claims that persuasive evidence of the current value of the property may be found in the public bidding which took place on February 2, 1980. There had been extensive advertising for three months of the sale, and over 50 persons had indicated an interest in the property, according to the testimony of the Committee, Richard T. O'Connell. The actual bidding started at $575,000.00 and concluded at $640,000.00. Since the bidder receives the property subject to the unpaid taxes due the Town of Old Saybrook, in effect, the sale price realized at the auction amounts to $702,104.19. While a public auction would normally indicate a liquidation value rather than fair market value, under the circumstances of this sale and the range of bidding, the price obtained does have some probative significance.

After review of all of the evidence, I conclude that the fair market value of the property is not in excess of $750,000.00. I find that the valuation set by Mr. DeLucco has not been adequately supported by the testimony received at the hearing. It is unnecessary to refine the valuation beyond the approximation of $750,000.00, since the only purpose for determining the value of the property is to ascertain the existence of any equity for the debtors. Since the indebtedness admitted by the debtors far exceeds $750,000.00, there clearly is no equity in the property for them.

The one-year delay ordered by the Superior Court in the foreclosure proceeding before the public sale was to take place allowed the debtors a reasonable time to find either a potential source of refinancing or a purchaser for the marina. The debtors were unable to do so. During that year, they operated the marina during the summer, received all of the income and paid little, if anything, on their debts. The debtors have not presented any credible evidence that during the additional two months that the cases have been pending in this court any persons are ready either to refinance or to purchase the property. DeVito testified to contacting various potential sources for these purposes, but he presented no written agreements. Taxes and mortgage interest continue to mount. In view of the finding of the Court as to the value of the Terra Mar, the property is worth less than the sum due the plaintiff as first mortgagee. The longer the delay, the greater the amount of taxes to be paid to the tax collector of Old Saybrook, and the greater the loss to the plaintiff. The bid of $640,000.00 received at the public auction may be rendered unenforceable if the automatic stay is not lifted to allow the sale to close by April 28, 1980. In view of the property value found by this Court, and the appraisals received by the state court, the high bid was a substantial offer, acceptable to the plaintiff, and it may not be equalled or surpassed at another sale.

In a decision rendered by this Court under the Bankruptcy Act, involving a complaint for relief from stay in a Chapter XII case, it was held that the significant factors to be considered in such a proceeding are whether: (1) the secured creditor will suffer imminent and irreparable injury from the continuation of the stay, (2) the property sought to be foreclosed upon is necessary to effect a reorganization, and (3) there is a reasonable probability of a successful reha-

bilitation within a reasonable time. *In re Fortin*, 5 BCD 90 (B.C.Conn. 2/6/79).[8]

It appears that § 362(d)(2) includes essentially the same key elements mentioned in *Fortin*. I conclude that the requirement in § 362(d)(2)(B) that the property "be necessary to an effective reorganization" depends upon a finding by the court that there is a reasonable possibility of a successful reorganization within a reasonable time. This finding the Court cannot make. The debtors have had an extended period to seek someone to refinance their operation, if that is at all feasible. The debtors have not made any meaningful proposals to safeguard the plaintiff or offer it adequate protection in the event the state foreclosure is further stayed and the benefit of the bid of $640,000.00 plus assumption of taxes is lost.[9] The plaintiff requires the cash from the foreclosure sale to pay off pressing debts of its own. The debtors have appropriated all income from the property during the past year. The proposals for rehabilitation testified to at the hearing by DeVito amount to nothing more than a hope that a buyer or investor may yet be found.

> The short of it is that the debtor is utilizing the . . . stay, hoping that somewhere, someone will fund an arrangement or refinance the mortgage with the plaintiff. This is entirely too slim a reed upon which this Court should exercise its discretion and keep the plaintiff at bay while the debtor continues to pray. *In re Groundhog Mountain Corp.*, 1 BCD 923, 926 (B.C.S.D.N.Y. 5/6/75).

The debtors claim that it is inherent in any Chapter 11 proceeding, where the debtor's main asset consists of real estate and its business is the operation of that particular real estate, that the loss of the real estate thwarts any chance of a successful reorganization, and, therefore, the property is indispensable to the rehabilitation of the debtor. "Indispensability of the property to the debtor's survival and hope of rehabilitation is not enough, of course, to justify continuation of the stay when rehabilitation is hopeless or the stay threatens injury to the lienor's security." *Kennedy, The Automatic Stay in Bankruptcy*, 11 U.Mich.L.J. Ref. 179, 244 (1978). Professor Kennedy, in a subsequent article, *Automatic Stays Under the New Bankruptcy Law*, 12 U.Mich.L. J.Ref. 46 (1978) concluded: "Under section 362(d), as enacted, the bankruptcy court may, but is not required to, find that an encumbered building which the debtor operates without having other equity in it is not essential to an effective reorganization." From all that has been said, it is adjudged that the plaintiff has sustained its burden of proof under § 362(d)(2), and the defendants have not.[10]

The stay imposed by 11 U.S.C. 362(a) is hereby modified to permit the Terra Mar Development Corporation to proceed with the foreclosure action in the Superior Court for the Judicial District of Middlesex, Connecticut, being Case No. 028330, in accordance with Connecticut statute made and provided in such case.

This Memorandum and Order shall constitute findings of fact and conclusions of law in accordance with Rule 752 of the Rules of Bankruptcy Procedure. It is

So ordered.

---

**8.** Citing *Norton, Real Property Arrangements*, Part 14, Sec. 14–3, 4, 5.

**9.** Adequate protection under 11 U.S.C. 361 may be provided by cash payments equal to a decrease in value of the secured party's interest in property, a replacement lien or other relief resulting in the realization of the indubitable equivalent of the secured party's interest. Nothing the debtors have offered can be construed as being adequate protection for the plaintiff under the circumstances of this case.

**10.** This conclusion makes it unnecessary to consider further the claims made by the plaintiff under § 362(d)(1) as to a finding of cause. In effect, four of the five grounds alleged (with the exception of the "bad faith" ground) are involved in the conclusions reached by the Court under § 362(d)(2).