Sheppard Faber, c/o Faber, Levine & Tryson, P.A., Coral Gables, Fla., for plaintiff.

**In re Precious A. JOHNSON, Debtor.**

**The CENTRAL NATIONAL BANK OF MIAMI, a National Banking Association, Plaintiff,**

v.

**Precious A. JOHNSON, Defendant.**

**Bankruptcy No. 80–298–BKC–JAG–G. Adv. No. 80–0063–BKC–JAG–A.**

United States Bankruptcy Court, S. D. Florida.

Aug. 29, 1980.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding came on for final hearing before the undersigned judge on August 27, 1980 pursuant to the order entered by the Honorable Sidney M. Weaver, Bankruptcy Judge, on August 12, 1980 (C.P. No. 17) vacating his previous order modifying stay dated June 27, 1980 and transferring the matter for a trial de novo to the undersigned judge.

The parties appeared at the final hearing on August 27, 1980 through counsel only and no further evidence in any form was presented, both parties relying upon the previous record in the case, particularly the testimony taken before Judge Weaver on May 15, 1980 and the exhibit admitted into evidence.

The plaintiff in this adversary proceeding, The Central National Bank of Miami, had perfected its action to foreclose a mortgage on real estate owned by the debtor–defendant, Precious A. Johnson, long prior to the filing of the voluntary petition under chapter 11 in this court. The debtor–defendant's petition was filed virtually on the

eve of the foreclosure sale in the state court. This adversary proceeding was commenced by the plaintiff seeking relief from the automatic stay so that it could complete its state court foreclosure and proceed to the sale of the subject property in state court.

The plaintiff presented evidence that the property was worth between $55,000 and $60,000. The defendant testified that the property was worth $80,000 and had listed it at that value in her schedules. However, at the final hearing where no further evidence was presented, the defendant through her counsel conceded that there was no equity in the property and that it was worth less than the amount of the plaintiff's lien at the time of the final hearing. The amount of the plaintiff's lien as established in the state court proceeding prior to the chapter 11 petition in this court was in excess of $63,000 as of February 14, 1980 with interest accruing since that date.

■ However, in addition to the absence of equity, the court must find that such property is not necessary to an effective reorganization before the automatic stay can be lifted under § 362(d)(2)(B).

On May 15, 1980, the defendant testified that she was considering converting her small four–unit property to condominiums and selling the condominium units. The plaintiff's expert at that hearing testified that condominium conversion was not feasible for a property of this age in the condition it was in, the kind of property it was and in the location in which it exists. Each unit is in effect an efficiency type accommodation consisting of approximately 500 square feet.

At the hearing on August 27, 1980, counsel for the defendant conceded that conversion to condominium was not feasible and that that concept had been abandoned by the debtor–defendant.

In fact, the proposed plan filed by the debtor in the main proceeding, between the May 15, 1980 hearing and the August 27, 1980 hearing, is predicated on a refinancing or sale of the subject property, it being the only substantial asset owned by the debtor–defendant.

No evidence of a realistic prospect of sale or refinancing was offered by the defendant. Statement of counsel merely reflected a vague possibility that there might be someone who would fund an arrangement to refinance the mortgage with the plaintiff.

The mortgage under foreclosure had been in default for approximately two years as stipulated by the parties. The gross income from the property from the three units that were rented. is approximately $515 per month with the fourth unit being occupied by the defendant herself. This has obviously been insufficient to maintain the mortgage in good standing and to prevent the defendant–debtor from accumulating other obligations that are past due as reflected in her schedules.

Of course there can be no reorganization without the utilization of the subject property. However, based upon the foregoing findings, the court concludes that even utilizing the subject property there could not be an "effective" reorganization as required by the Code. See *Matters of Terra Mar Associates and Dev Enterprises*, 3 B.R. 462, 1 C.B.C. 2nd 892 (Bkrtcy.).

■ Based upon all of the foregoing, the court finds and concludes that the chances for an effective reorganization are exceedingly remote to the point of being practically non–existent and therefore it would be extremely inequitable to continue the stay as it applies to the plaintiff in this case.

These findings and conclusions are being entered under B.R. 752 and as is required by B.R. 921, a separate judgment granting the plaintiff's request for relief from stay will be entered.