In the Matter of SUNDALE ASSOCI-
ATES, LTD., et al., Debtors.

SOUTHEAST FIRST NATIONAL BANK
OF MIAMI, a national banking
association, Plaintiff,

v.

SUNDALE ASSOCIATES, LTD., The
Sunrise Club, Inc., Defendants.

Bankruptcy Nos. 81-00117, 81-00118
and 81-0079-A.

United States Bankruptcy Court,
S. D. Florida.

June 29, 1981.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This Cause came on for Trial upon an Adversary Proceeding filed by Plaintiff, Southeast First National Bank of Miami ("Southeast"), against the Debtors in Possession, Sundale Associates, Ltd., ("Sundale"), and The Sunrise Club, Inc. ("Sunrise"), (hereinafter collectively "the Debtors"), seeking relief from the automatic stay imposed by 11 U.S.C. § 362. The Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the pleadings and arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

Sundale owns a rental apartment complex designed to meet the needs of senior citizens, which is located at 9100 North

Kendall Drive, Miami, Florida and known as The Sunrise Club (hereinafter "the Property"). Sunrise operates the Property under a management agreement with Sundale. The Property, which is the Debtors' only substantial tangible asset, consists of an 8.9 acre site on which the Debtors have constructed two apartment buildings comprising 156 rentable units, plus a central building used by tenants for dining and recreational activities. The Debtors have planned to build an additional two apartment buildings on the Property, but only preliminary site work has been completed to date.

Southeast is the Debtors' construction lender on the Property. Southeast is holder of seven promissory notes ("the Notes") secured by various mortgages encumbering the Property, consisting of a land mortgage, plus two mortgages on each of three respective construction phases. The Notes are further secured by assignments of rental payments due the Debtors under leases with tenants. The Notes are all past maturity.

Southeast began advancing construction monies to the Debtors in early 1978. By February 1979, interest payments required by the Notes were not being timely made. Protracted negotiations between Southeast and the Debtors proved fruitless, and in April 1980, Southeast commenced a suit to foreclose its mortgages ("the Foreclosure") in State Court. The Debtors answered the suit asserting various affirmative defenses, plus counterclaims against Southeast seeking compensatory and punitive damages aggregating some $80 million. Upon Southeast's motion, the State Court appointed a receiver to operate the Property while the Foreclosure was pending.

By January 1981, the parties had virtually completed discovery and Trial preparation. On January 28, 1981, when the Foreclosure was at issue and a Trial date had been set in State Court, the Debtors filed Voluntary Petitions ("the Petitions") under Chapter 11 of the Bankruptcy Code seeking the protection of this Court to reorganize their business. By Order entered January 30, 1981, this Court consolidated proceedings with respect to the Debtors for purposes of administration only. The Petitions, of course, invoked the automatic stay prescribed by 11 U.S.C. § 362(a), and halted the Foreclosure in State Court. The Petitions also terminated the State Court receivership, pursuant to 11 U.S.C § 543, and the Property has been operated by the Debtors, as Debtors-In-Possession, since the inception of these Chapter 11 proceedings.

Immediately after filing the Petitions, the Debtors removed the Foreclosure to this Court, pursuant to 28 U.S.C. § 1478(a), whereupon Southeast moved to remand the Foreclosure to State Court, pursuant to 28 U.S.C. § 1478(b). When the matter came on for hearing, this Court determined that the Foreclosure involved only issues of state law, ready for Trial by the State Court, which had become fully familiar with the Foreclosure by the time it was removed to this Court. Accordingly, by Order entered March 24, 1981, this Court, in the exercise of its statutory discretion, remanded the Foreclosure to State Court. That Order was reaffirmed by an Order entered May 19, 1981, denying the Debtors' application for rehearing.

In the interim, in this Court, Southeast and the Debtors had each filed an adversary proceeding against the other. Southeast had filed the instant adversary proceeding seeking relief from stay so that it might continue to prosecute the Foreclosure. The Debtors' adversary proceeding, though ostensibly intended to determine the validity, priority and extent of Southeast's lien, merely restated the Debtors' affirmative defenses and counterclaim already asserted in the Foreclosure, then pending in State Court following the remand.

This adversary proceeding came on for Trial on May 19, and June 1, 1981. Thereafter, upon the Debtors' motion, the evidentiary record was reopened on June 22, 1981, so that the Debtors might introduce additional evidence and so that Southeast might offer evidence rebutting it. The evidentiary record is now complete.

Southeast timely moved to dismiss the Debtor's adversary proceeding for lack of jurisdiction on the ground that all claims asserted in the Debtors' Complaint had already been remanded to State Court with the Foreclosure. This Court heard that motion to dismiss on May 18, 1981, and reserved ruling pending disposition of this adversary proceeding.

At trial, Southeast sought relief from stay pursuant to 11 U.S.C. § 362(d)(1) and (2). On the pivotal question of the value of the Property, the only credible and persuasive evidence presented was the testimony of Charles V. Failla, M.A.I., a real property appraiser called as a witness by Southeast. Failla, who was the only expert witness on the subject of real property value offered by either side, presented his opinion, supported by a detailed seventy page analysis admitted in evidence, that the current market value of the property, if converted to its highest and best use, is $6,100,-000.00. Failla further allocated that value among the various construction phases of the Property, subject to the various notes and mortgages held by Southeast. Failla's opinion was uncontroverted in any material respect, and this Court accepts his valuation and finds that, for the purpose of determining whether Southeast is entitled to relief from stay, the current market value of the Property is $6,100,000.00.

After establishing the value of the Property, Southeast proved the amount of its debt. Through the testimony of George Franz, Southeast's Vice President for loan operations, and through the introduction of supporting business records and summaries, Southeast established that the unpaid and outstanding principal balance of the loan is slightly more than $5,700,000.00, and that the books and records of Southeast reflect the accrual of due and unpaid interest owing in the amount of approximately $1,900,-000.00, as of April 1, 1981. Interest continues to accrue at a current rate of approximately $3,000.00 per day. The sum and substance of Franz's testimony, which this Court accepts as to the amount of the debt for the purpose of determining relief from stay, is that taking into account certain

payments made for the account of the Debtors, the books and records of Southeast reflect a total amount of principal and interest due and owing from the Debtors as of April 1, 1981, of approximately $7,600,-000.00.

Southeast then rested, having made a prima facie showing that there is no equity in the Property and that Southeast is substantially injured by the continuation of the automatic stay in that interest continues to accrue at about $3,000.00 per day, with no equity cushion in the Property against which it can be realized in the event the Debtors are unable to effect a successful reorganization. Although the Debtors contend they have equity in certain phases of the Property, this Court has carefully reviewed the evidentiary record and compared the phase by phase allocations of market value against the respective phase by phase allocations of principal and interest due Southeast and finds that there is no equity in the Debtors as to any phase of the Property.

In order to maintain the stay and keep the Foreclosure from proceeding, the Code places a burden on the Debtors to show that Southeast is adequately protected and that the Property is not necessary to an effective reorganization. 11 U.S.C. § 362(d) and (g). Of course, in a single-asset case such as this one, the latter burden requires a showing by the Debtors that there is a reasonable possibility of a successful reorganization within a reasonable time. *In re Mulcahy*, 5 B.R. 558, 562 (Bkrtcy.D.Conn. 1980); *In re Terra Mar Associates*, 3 B.R. 462, 466 (Bkrtcy.D.Conn.1980).

In an attempt to discharge their burden, the Debtors called as adverse witnesses various officers and employees of Southeast, intending to prove that certain portions of the unpaid accrued interest had been waived by Southeast, thereby diminishing the amount of the debt. Such issues, however, should not be determined as part of this expedited proceeding concerning relief from stay under 11 U.S.C. § 362(d). *United Companies Financial Corp. v. Brant-*

ley, 6 B.R. 178, 185–87 (Bkrtcy.N.D.Fla. 1980); *see also, In re Executive Leasing Corp.*, 3 B.R. 261 (Bkrtcy.D.Puerto Rico 1980). Consideration of such issues is inappropriate here, where the Debtors' claim of waiver is inextricably intertwined with the various claims for relief asserted by the Debtors against Southeast, which are now pending and ready to be tried in the Foreclosure heretofore remanded to State Court. In the Order of Remand this Court previously decided that those claims, which arise under state law, nor under the Bankruptcy Code, are more appropriate for determination by the State Court. Accordingly, this Court is in no way passing on the merits of those claims, and is merely reiterating its prior determination that the State Court rather than this Court is the appropriate forum to try them. Trial of those claims in State Court will aid these Chapter 11 proceedings, for it is unlikely that a plan of reorganization can be effected unless the respective amounts of the various claims and counterclaims asserted by these parties is liquidated in an appropriate forum, in this instance, in the State Court.

█ On the record presented, this Court must find and conclude that the Debtors have no equity in the Property and that Southeast, as holder of mortgages with interest accruing daily at a substantial rate, is not receiving adequate protection. In addition, the Debtors' attempt to show that an effective reorganization is reasonably possible is unpersuasive. The principal of the Debtor testified concerning various offers he has received to purchase the Property, but none were supported by either testimony of the purported offeror, nor sufficiently documented to persuade this Court that such offers are substantial in nature. At trial on June 1, 1981, counsel for the Debtors apprised this Court of the Debtors' intention to file an immediate Plan supported by a cash deposit sufficient in amount to satisfy claims of Southeast and other creditors. To date, however, no Plan has been filed.

In view of the Debtors' manifest failure to discharge their statutory burden, this Court will modify the automatic stay to afford Southeast the relief mandated by the Code. In granting this relief, this Court has taken into account that this loan has been in apparent default for more than two years and that Southeast appears to have no equity cushion to secure interest now accruing daily. *See, In re Terra Mar Associates, supra*, 3 B.R. 462. It seems to this Court that Southeast is entitled to a determination in State Court of its rights under the Notes and the mortgages it holds. In the same suit, the State Court will also try the Debtors' claims against Southeast, thereby liquidating all claims between these parties and thereby determining the amount and priority of the claim of Southeast under any Plan proposed in these proceedings, or against such proceeds as may be realized by other disposition of the Property under the auspices of this Court.

Accordingly, this Court will modify the automatic stay in order that the Foreclosure pending in State Court may proceed to Final Judgment; provided, however, that no sale of the property may be conducted without the prior approval of this Court. In this way, the Debtors may continue their efforts to reorganize in this Court, while at the same time, Southeast may proceed to obtain determination of its rights without further delay, with this Court retaining jurisdiction and control over the ultimate disposition of the Property.

In view of the foregoing disposition of this adversary proceeding, as reflected in a Final Judgment of even date entered in conformity herewith, this Court has also entered an Order of even date dismissing the Debtors' pending Complaint against Southeast for lack of jurisdiction in that all claims asserted in the Debtors' adversary proceeding are identical to those which have been remanded to the State Court and which shall be tried there in accordance herewith.