**In re ELCO LOGGING CORPORATION, an Oregon corporation, FKA Elco Logging Company, Debtor-in-possession.**

**MACK FINANCIAL CORPORATION, an Ohio corporation, Plaintiff,**

v.

**ELCO LOGGING CORPORATION, Defendant.**

**Bankruptcy No. 683–07655.
Adv. No. 683–6217.**

United States Bankruptcy Court, D. Oregon.

Aug. 24, 1983.

Charles R. Markley, Schwabe, William-son, Wyatt, Moore and Roberts, Portland, Oregon, for plaintiff.

Thomas Howser, Cottle and Howser, Ashland, Oregon, for defendant.

## MEMORANDUM OPINION

POLLY S. WILHARDT, Bankruptcy Judge.

The plaintiff seeks relief from the automatic stay to pursue its rights and reme-dies under the Uniform Commercial Code by repossessing and selling the collateral securing three retail installment contracts assigned to it by defendant's seller.

Each contract represents a separate transaction. The first contract is secured by four trucks and four trailers. The second and third contracts are each secured by another truck and trailer. Defendant is in default on each contract. Each contract allows plaintiff reasonable attorney's fees and grants it the right to deduct from sales proceeds its storage, selling and repair expense.

The parties agree that the principal amounts due on the contracts are:

First contract—$146,584.60

Second contract—$46,213.87

Third contract—$45,517.18.

The parties further agree the annual rate of interest on the contracts is as follows:

First contract—13.43%

Second contract—13.91%

Third contract—18.42%.

Without objection by defendant, plaintiff submitted to the Court an appraisal showing the present value of the collateral as follows:

|  | If Sold as Units | If Sold Separately |
| --- | --- | --- |
| First Contract | $160,000.00 | $156,000.00 |
| Second Contract | $ 47,000.00 | $ 46,000.00 |
| Third Contract | $ 38,500.00 | $ 38,700.00 |

Again, without objection by defendant, the plaintiff submitted to the Court a copy of defendant's fiscal 1982 income tax depreciation schedule as another index of collateral value.

Although plaintiff in both its complaint and the pre-trial order requested relief from the stay only under Section 362(d)(2), at trial it requested the Court also to consider a modification or release from stay under the terms of Section 362(d)(1). The issue of adequate protection both being raised by defendant in the pre-trial order and being tried by implied consent of the parties, the Court, pursuant to Rule 715, shall treat it as being raised in plaintiff's complaint. Although new bankruptcy

rules took effect on the day of trial, as this case commenced and proceeded as an adversary proceeding rather than a contested matter, the Court finds the application of Rule 9014, which does not incorporate Rule 7015 the counterpart to old Rule 715, would work an injustice. Thus, for purposes of this case, Rule 715 applies.

■ Defendant's president testified the trucks and trailers are used on a regular basis for hauling logs to mills; that he requires all trucks and trailers he presently has and anticipates having to hire more to meet his present contractual hauling obligation which is to be fulfilled by the end of 1983. There was uncontroverted testimony that due to the recent increase in mill production there are a shortage of both used trucks and trailers to hire and to purchase. This evidence leads to the Court's finding that the plaintiff cannot receive relief from the stay under Section 362(d)(2) on any of the contracts as the collateral is necessary for an effective reorganization. Indeed the evidence indicated without the collateral the defendant would be hard pressed to continue his present hauling schedule. Even if the test under Section 362(d)(2)(B) were whether or not an organization was feasible (*In re Terra Mar Associates*, 3 B.R. 462, 6 B.C.D. 150 [Bkrtcy.D.Conn. 1980]), the defendant's president's testimony as well as the defendant's monthly financial statements filed with the Court indicate the defendant presently has all the business it can handle and is operating at a profit. A reorganization appears feasible.

Under Section 362(d)(1) the Court may condition or terminate the stay "for cause including the lack of adequate protection of an interest in property ...." Under Section 361(1) and (2) adequate protection is to be provided "... to the extent that the stay ... results in a decrease in the value of [an] entity's interest in ... property". Thus, whatever interest the plaintiff has in the collateral before the Court as of the date the stay is imposed is entitled to protection.

The plaintiff and defendant disagree about the method of measuring the interest to be protected. Plaintiff insists the Court should consider the principal and interest owed it to date plus late charges, anticipated costs of repairing the repossessed collateral, broker's fees and other sales costs. Defendant is just as insistent that the protected interest is to be measured by the value of the collateral as of the date the stay was imposed.

Judge Schwartzberg clearly sets forth the measurement of a creditor's interest which is to be protected under Section 362(d) in *In re Pine Lake Village Apartment Co.*, 19 B.R. 819 at 825:

" 'the interest in property' entitled to protection is not measured by the amount of the debt but by the value of the lien." (Citing *In re Alyucan Interstate Corp.*, 12 B.R. 803, 7 B.C.D. 1123, 4 C.B.C.2d 1066 (Bkrtcy.D.Utah 1981)) "The court noted that pursuant to § 506(a) of the Code, the value of a lien is the amount of the allowed secured claim. Thus, if a creditor is undersecured, the lien will be equal to the value of the collateral. Where he is oversecured, it is the amount of the debt plus interest and expenses."

■ In the context of a Chapter 11 proceeding like the one before this Court, the intent of Section 362(d)(1) is to authorize the Court to order steps taken to preserve the creditor's status quo on the date the petition was filed for the period of time until a plan is confirmed which permanently addresses that creditor's rights and obligations. *In re Alyucan Interstate Corp.*, 12 B.R. 803, 808, 7 B.C.D. 1123, 4 C.B.C.2d 1066 (Bkrtcy.D.Utah 1981).

Before it can apply this measurement to the facts before it to determine the value of the plaintiff's interest entitled to adequate protection under each of the contracts, the Court must settle upon a figure for the present value of the collateral securing each contract.

■ This Court believes that values reached through use of depreciation methods allowed by the Internal Revenue Code to save taxes are little aid in determining valuation for purposes of providing ade-

**12**

quate protection. This is true whether the valuation figure is to be a wholesale value (*In re Thomas Parker Enterprises, Inc.*, 8 B.R. 207 [Bkrtcy.D.Conn.1981]) or a going concern value (*In re American Kitchen Foods, Inc.*, 9 C.B.C. 537 [Bkrtcy.D.Me. 1976]).

As this Court cannot assume the trucks and trailers would be sold either as units or separately, it will split the difference and find the value of the collateral for each contract as follows:

First contract—$158,000.00

Second contract—$46,500.00

Third contract—$38,600.00

On the second and third contract, respectively, the value of the collateral was less than the principal and accrued interest due plaintiff on the date the petition was filed. Thus, the plaintiff's interest to be protected on these two contracts does not exceed the value of the collateral.

At first glance it might appear the plaintiff is protected by an equity cushion on the first contract. However, Judge Schwartzberg recognizes that where a creditor is over-secured the value of its lien includes the amount of the debt plus interests and *expenses* (emphasis added). Judge Ordin in *In re Pitts*, 2 B.R. 476 (B.C.C.D.Cal.1979) expands on this concept at page 477ff:

"[1] How is adequate protection defined in the context of this fact situation? "A basic ingredient of the secured creditor's bargain is the right to resort to the collateral, if necessary, in payment and discharge of the debt. However, the expenses incident to foreclosure and sale are also an integral part of this bargain. Use of the collateral to pay and discharge the debt contemplates the mutation of the collateral to cash in an amount equal to the sum of the claim and the foreclosure costs. The base figure in any realistic analysis of the secured creditor's position must be the aggregate of (i) the amount of principal, interest, and other permissible charges to date of sale, plus (ii) the costs of foreclosure and sale. The difference between this base figure and the anticipated sales price may be referred to as the cushion."

Testimony indicated that upon repossession plaintiff, prior to resale, completely rechecks the units and upon resale pays broker's fees of 2½% of the gross sales price. Taking these expenses into account it is clear to the Court there is little, if any, equity cushion to provide plaintiff with adequate protection on the first contract. Thus, on this contract too, the interest in property entitled to protection is equal to the value of the collateral.

The testimony showed the defendant has a good maintenance and repair program; that these units have low mileage and run on very little unpaved road. There was also evidence indicating, however, that despite a repair and maintenance program some depreciation persists. The Court finds that a 10% per annum depreciation factor is not unreasonable to assume considering the type of collateral and its heavy use. The Court will require the defendant to furnish the plaintiff adequate protection in the form of monthly payments to the plaintiff, retroactive commencing June 15, 1983, of $2,025.00 per month. The payments for June, July and August are payable immediately with future payments on the 15th of each month thereafter. Defendant's officers shall allow plaintiff's authorized representatives access on a continuing basis during reasonable hours to inspect the collateral. Plaintiff is free to seek further protection from this Court at a future date if such inspection seems to warrant it.

As the issue regarding plaintiff's right, as part of adequate protection, to payments to compensate it for delay in realization on the collateral securing the under-secured contracts two and three was not raised by the plaintiff in either the pre-trial order or the trial this Court will not address it at this time.

A separate Order shall be issued consistent herewith. This Memorandum Opinion contains the Court's Findings of Fact and Conclusions of Law and pursuant to Bank-

ruptcy Rule 9014, which incorporates Rule 7052, they will not be separately stated.