**In re PACIFIC TUNA CORPORATION, Debtor.**

**Bankruptcy No. 5–84–00934–11.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

March 4, 1985.

Henry Kaim of Sheinfeld, Maley and Kay, Houston, Tex., for debtor.

John Flowers and Barbara Hauser of Locke, Purnell, Boren & Neely, Dallas, Tex., for HGN Corp.

## MEMORANDUM OPINION

BURT W. THOMPSON, Chief Judge.

On the 4th day of February, 1985, came on for consideration in the above styled and numbered cause the Motion of HGN Corporation (hereinafter "HGN") to modify the automatic stay as to the Vessel Coinseca Beta; to determine the automatic stay is not applicable to the Vessel Coinseca Alpha and the Proceeds from the sale of the Vessels El Audaz and Centauro Del Norte and alternatively to Modify the Automatic stay as to the Vessel Coinseca Alpha and the Proceeds from the sale of the Vessels El Audaz and Centauro Del norte. Due notice having been given, and the respective parties having appeared through their counsel of record. And, after considering the oral and documentary evidence presented at the hearing conducted on February 4 and February 5, 1985, the arguments of counsel and the briefs of HGN and the Debtor, Pacific Tuna Corporation (hereinafter "PTC"), the Court hereby renders the following Memorandum Opinion in support of its finding that the Section 362 automatic stay shall be lifted as to the Vessels Coinseca Alpha and Coinseca Beta in that the Debtor has no equity in these vessels, the Debtor is totally impotent to adequately protect the interest of HGN in these vessels, and that the Debtor is wholly incapable of effectuating an effective reorganization. The Court further finds that no jurisdiction exists in this Court over the proceeds from the sale of the El Audaz and the Centauro Del Norte held in the registry of the Federal District Court for the Southern District of California, San Diego Division, and that that Court has exclusive jurisdiction over the desposition of these funds.

In that connection, all Findings of Fact made herein may be considered Conclusions of Law, if appropriate. All Conclusions of Law made herein may be considered Findings of Fact, if appropriate. All Findings of Fact and Conclusions of Law not expressly made herein are deemed made in support of this Memorandum Opinion.

The facts relevant as revealed by the pleadings and evidence may be summarized as follows.

On June 7, 1984, PTC filed its Chapter 11 petition in bankruptcy in this Court.

In consideration for a loan of approximately $7,000,000.00, PTC granted HGN a valid first lien, in the nature of a First Preferred Fleet Mortgage, in the Vessels Coinseca Alpha, Coinseca Bets, Centauro Del Norte and El Audaz.

PTC defaulted under the terms of HGN's note and mortgage. As a result, in March, 1983, HGN caused the El Audaz and the Centauro Del Norte to be arrested by the United States Marshal in San Diego, California, the Coinseca Alpha to be arrested by the Territorial Marshal in American Samoa, and the Coinseca Beta to be arrested by authorities in Vancouver, British Columbia. Simultaneously with the arrest, HGN commenced in rem admiralty and in personam actions against the respective vessels and PTC in each jurisdiction. The action in San Diego is numbered Case No. 83–492–T, and styled *HGN Corporation, Plaintiff v. the Vessels Coinseca Alpha, Centauro Del Norte, and El Audaz, in rem and Pacific Tuna Corporation, in personam, defendants* (hereinafter "San Diego litigation"). The case in American Samoa is Civil Action No. 21–83, styled *HGN Corporation v. the Vessel Coinseca Alpha, et. al., and Pacific Tuna Corporation,* Defendants in the High Court of American Samoa, Trial Division (hereinafter "Samoan litigation"). The action in Vancouver, British Columbia, Canada is Case No. T–609–83 between *HGN Corporation and the ships Coinseca Beta, and those interested in her and Pacific Tuna Corporation* (hereinafter "Vancouver litigation").

The Federal District Court for the Southern District of California, San Diego Division ordered the El Audaz and the Centauro Del Norte sold. These vessels were sold and the proceeds from the sale, in the approximate amount of $6,500,000.00, were placed in the San Diego court's registry account.

HGN's lien in the El Audaz and Centauro Del Norte attached to the proceeds.

On August 8, 1984, the pending San Diego litigation was removed to this Court. Thereafter, on October 9, 1984, the San Diego litigation, upon Motion by Banco Nacional Pesquero y Portuario S.A. (hereinafter "Banpesca"), was remanded to the United States District Court for the Southern District of California, San Diego Division, for trial.

The remand order issued by the United States Bankruptcy Court for the Western District of Texas, by the Honorable Joseph C. Elliott, was in the nature of conditional remand allowing the automatic stay to be modified pursuant to 11 U.S.C. Section 362 solely to permit the San Diego Court to rule upon the lien disputes between HGN and Banpesca, thereby reserving jurisdiction over the disposition of the proceeds.

The San Diego litigation was tried and an order entered in December, 1984, holding that Banpesca did not have a valid second lien against the Vessels Coinseca Alpha and Coinseca Beta or against the proceeds in the registry of the San Diego court. On January 9, 1985, Banpesca filed a notice of appeal in the District Court in San Diego.

On December 15, 1983, pursuant to a settlement between HGN and PTC, a stipulated judgment was entered in the Samoan litigation by the High Court of American Samoa. Pursuant to this judgment the High Court ordered HGN's lien in the Coinseca Alpha foreclosed. A sale of the Coinseca Alpha was attempted by the Marshal of the High Court of American Samoa on August 15, 1983, but there were no bidders for the vessel. The Coinseca Alpha remains docked in American Samoa under the care and custody of the Marshal of the High Court of American Samoa.

No dispositive orders have been entered in the Vancouver litigation. Since March, 1983, the Coinseca Beta has been docked in Vancouver, British Columbia under the care and custody of the Admiralty Marshal of the Federal Court of Canada, Trial Division.

As of February 4, 1985, PTC was indebted to HGN in the sum of $13,086,364.00 consisting of $10,987,324.00 in principal and interest and $2,099,040.00 in collection costs including interest on the funds advanced by HGN for its collection costs. Under the terms of HGN's note, interest is computed on a compounded basis. As of the date of the trial, the daily accrual of interest was $7,258.00. In addition, the maintenance fees for the Coinseca Alpha

and the Coinseca Beta total $20,438.00 per month.

The question for consideration by this Court is whether sufficient grounds exist for the modification of the Section 362 automatic stay to allow HGN to foreclose on its First Preferred Fleet Mortgage against the Coinseca Alpha, the Coinseca Beta and the proceeds from the sale of the Centauro Del Norte and the El Audaz currently held in the registry of the Federal District Court in San Diego. As a condition precedent to the determination of the Section 362 issue, the Court must ascertain whether jurisdiction lies in this Court to permit modification of the stay as to the Coinseca Alpha and the proceeds held in the Court registry in San Diego.

## I. JURISDICTION

PTC contends that the Coinseca Alpha is an asset of the Debtor's estate over which this Court has jurisdiction to enforce the automatic stay. Conversely, HGN asserts that the Coinseca Alpha is not an asset of the estate due to the entry of the stipulated judgment by the High Court of American Samoa on December 15, 1983, allowing HGN's lien to be foreclosed on the Coinseca Alpha.

The Supreme Court addressed the issue of whether property which is the subject of a security interest remains property of the estate after foreclosure but prior to sale in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). In *Whiting Pools* the Internal Revenue Service levied against property of Whiting Pools, Inc. to satisfy a tax lien. Immediately thereafter Whiting Pools, Inc. filed a petition under Chapter 11. The debtor then filed a motion to compel turnover of property against the Internal Revenue Service. In affirming the Court of Appeal's order compelling turnover of the property, the Supreme Court stated that "Section 542(a) grants to the estate a possessory interest in ... property of the debtor that was not held by the debtor at the commencement of the reorganization proceedings". *Whiting*, 103 S.Ct. at 2314

(1983). In holding that the Chapter 11 estate includes property of the debtor that has been seized by a creditor prior to filing, the Supreme Court made it abundantly clear that seized property remains an asset of the estate until that property is sold. The basis for this rationale is that the secured creditor is protected under the Bankruptcy Code in that the protection afforded by possession is replaced by the right of adequate protection guaranteed in Section 362.

In the case at bar the High Court of American Samoa granted HGN the right to foreclose its lien on the Coinseca Alpha. A sale of the Coinseca Alpha was attempted by the Marshal of the High Court of American Samoa on August 15, 1983, but there were no bidders. The Coinseca Alpha remains docked in American Samoa under the care of the Marshal of the High Court of American Samoa.

In keeping with the precedent established by the Supreme Court in *Whiting Pools*, the Coinseca Alpha is property of the estate of the Debtor in that the foreclosure sale on the vessel was never consummated.

With regard to the proceeds of the sale of the Centauro Del Norte and the El Audaz maintained in the registry of the Federal District Court in San Diego, the Debtor contends that the conditional order of remand entered by the Honorable Joseph C. Elliott on October 1st, 1984 retains jurisdiction in this Court over the disposition of those proceeds.

The effect and reviewability of an order of remand entered by a bankruptcy court was addressed by the Fifth Circuit Court of Appeals in *Browning v. Navarra*, 743 F.2d 1069 (5th Cir.1984). In that case the parties to a removed state suit for imposition of a constructive trust on the debtor's assets agreed to the remand of the removed case under certain conditions. The subsequent state proceedings did not adhere to the conditions set forth in the remand order and the Chapter 7 trustee sought to have the state court judgment entered against

the debtors declared void. The district court granted summary judgment for the trustee.

In interpreting the intent of 28 U.S.C. Sec. 1478(b) the Fifth Circuit held that the remand of an action terminates the jurisdiction of the bankruptcy court over that action. The Court went on to say that conditional remand orders run counter to the fundamental precepts of remand. *Navarro, supra*.

█ In the case at bar, the conditional retention of jurisdiction over the disposition of the proceeds of the sale of the Centauro Del Norte and the El Audaz was clearly erroneous and in contravention of 28 U.S.C. Sec. 1478(b). The Federal District Court for the Southern District of California, San Diego Division has exclusive jurisdiction over the proceeds from the sale of the two vessels held in the registry of that Court.

## II. SECTION 362 AUTOMATIC STAY

Section 362(d) states that:

The Court shall grant relief from the stay provided under subsection (a) of this section...—

(1) for cause, including the lack of adequate protection of an interest in property of such priority in interest; or

(2) with respect to a stay of an act against property under subsections (a) of this section, if—

(A) the *debtor* does not have an equity in such property; and

(B) such property is not necessary to an *effective reorganization*.

11 U.S.C. Section 362.

Section 362 allows the debtor to avoid the lifting of the automatic stay if the lien of the movant-creditor is adequately protected. In determining whether HGN's lien on the Coinseca Alpha, Coinseca Beta and the proceeds from the sale of the Centauro Del Norte and the El Audaz is adequately protected, the Court must look to the equity cushion, if any, available to HGN.

The pleadings and the evidence adduced at the trial reveal that the total debt owed HGN by PTC as of February 4, 1985, is $13,086,364.00. Allowing an offset for the $6,500,000.00 in proceeds against which HGN holds a valid first lien, PTC remains indebted to HGN in the amount of $6,586,364.00 as of February 4, 1985. The uncontroverted evidence as to value of the vessels shows that the Coinseca Alpha has a present fair market value of not greater than $1,500,000.00 and that the Coinseca Beta, in its current unoutfitted condition, has a fair market value of not more than $500,000.00. The total value of the two vessels, therefore, is not greater than $2,000,000.00. The balance remaining on HGN's valid first lien after offset is $4,586,364.00 as of February 4, 1985. It is clear that PTC has no equity available with which to afford HGN adequate protection. No other alternative for affording HGN adequate protection was offered at the trial or in the pleadings of PTC.

█ Section 362(d)(2) provides the debtor with a second opportunity to avoid the effects of stay modification by proving that the debtor has an equity in the subject property and that the property is necessary for an effective reorganization. It is clear from the foregoing analysis that the debtor has no equity in the vessels or the proceeds. In order to determine whether the subject property is necessary for an effective reorganization the Court must look to whether there is a reasonable possibility of a successful reorganization of the debtor within a reasonable time. *See, In re Develop, Inc.*, 36 B.R. 998, 1005 (Bkrtcy.Hawaii 1984); *In re Sundale Assoc., Ltd.*, 11 B.R. 978 (Bkrtcy.S.D.Fla.1981). The evidence presented at trial clearly indicates that there is no reasonable possibility that PTC could, if its plan were implemented, operate profitably under the current conditions in the United States tuna fishing industry.

Therefore, an order shall be entered directing that jurisdiction over the proceeds from the sale of the Centauro Del Norte and the El Audaz lies exclusively in the Federal District Court for the Southern District of California, San Diego Division, and modifying the automatic stay as to the Coinseca Alpha and the Coinseca Beta per-

mitting HGN to foreclose upon its First Preferred Fleet Mortgage thereon.