**In the Matter of HUCKABEE AUTO COMPANY and Huckabee Properties, Inc., Debtors.**

**Bankruptcy Nos. 80–00151–Mac, 80–00152–Mac.**

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Sept. 21, 1981.

See also Bkrtcy., 33 B.R. 141.

Joseph J. Burton, Jr., Swift, Currie, McGhee & Hiers, Atlanta, Ga., for debtors.

Mark A. Gonnerman, Albany, Ga., for Jane Huckabee Miller.

MEMORANDUM DECISION ON THE OBJECTIONS OF JANE HUCKABEE MILLER AND THE FIRST NATIONAL BANK AND TRUST COMPANY IN MACON, AS TRUSTEE OF THE TRUST OF JANE HUCKABEE MILLER, TO THE CONFIRMATION OF DEBTORS' PLAN.

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

## STATEMENT OF THE CASE

On February 8, 1980, Huckabee Auto Company and Huckabee Properties, Inc., Debtors, filed in this Court separate voluntary petitions under Chapter 11 of Title 11 of the United States Code. These two cases were consolidated by order of this Court dated April 21, 1981. Debtors have jointly filed a plan of reorganization and a disclosure statement, as required by Chapter 11 of the Bankruptcy Code. After a hearing on the adequacy of the disclosure statement, certain court-ordered modifications were made, and the disclosure statement, as modified, was approved by order of this Court dated April 27, 1981. The disclosure statement, along with Debtors' plan of reorganization, was then transmitted by the Clerk of this Court to all parties in interest.

On June 9, 1981, Jane Huckabee Miller and The First National Bank and Trust Company in Macon, in its capacity as trustee of the trust of Mrs. Jane Huckabee Miller, created by Item VI of the will of Mrs. Marjorie Hinson Huckabee, deceased, filed their separate objections to the confirmation of Debtors' plan of reorganization.

The hearing on confirmation of Debtors' plan of reorganization commenced on June 16, 1981, and at the suggestion of Debtors' counsel, and with the agreement of all counsel in attendance, was continued until July 15, 1981. This continuance was granted to allow Huckabee Auto Company to develop information on its then pending loan application to the Small Business Administration. This loan was intended to help fund Debtors' plan. The confirmation hearing reconvened on July 15, 1981, and concluded on July 18, 1981.

Before the Court for decision are the "Objections to Confirmation of Debtors' Plan of Reorganization" filed by Jane Huckabee Miller, and the "Objections to Reorganization Plan" filed by The First National Bank and Trust Company in Macon, in its capacity as trustee of the trust of Mrs. Jane Huckabee Miller, created by Item VI of the will of Mrs. Marjorie Hinson Huckabee, deceased. These objections will be considered jointly by the Court based on the advice of counsel at the July 15, 1981 hearing in which the Court was advised that these two objections should be merged because they both assert the rights of Jane Huckabee Miller.

After consideration of the evidence, the arguments of counsel, and the briefs of counsel, the Court has this day entered an order sustaining the objection of Jane Huckabee Miller, and denying confirmation of Debtors' plan. The order further requires Debtors, and any parties in interest wishing to be heard, to appear in this Court on a day certain to show cause as to why additional time should be granted for the filing of an alternate plan of reorganization, and to show cause why Debtors' case should not be converted to a Chapter 7 liquidation or dismissed.

In support of its order, the Court attaches the following findings of fact and conclusions of law. To the extent any findings of fact constitute conclusions of law, or to the extent any conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

Jane Huckabee Miller, hereinafter "claimant," has a proof of claim on file with this Court in the amount of $142,752.37, and this claim is classified in Debtors' plan of reorganization as Class 4. Claimant's two written objections, which are of record with the Court, when merged, contain the following grounds for objection:

1. The plan fails to provide adequate information, is vague and ambiguous, and fails to specify treatment of claimant under the plan.

2. The plan fails to define what constitutes claimant's "indubitable equivalent" in violation of 11 U.S.C. § 1123(a)(3).

3. The plan fails to specify treatment of one or more classes of claims or interests that are impaired under the plan.

4. The plan's classification of claims fails to group claims or interests which are substantially similar in violation of 11 U.S.C. § 1122(a).

5. The plan fails to provide similar treatment for each claim or interest in a particular class.

6. Each class has not accepted the plan as required by 11 U.S.C. § 1129(a)(8).

7. The plan fails to provide adequate means for its execution and is not feasible.

8. To the extent the plan proposes "cram down" of claims or interests, it fails to meet the requirements of 11 U.S.C. § 1129(b).

Claimant's proof of claim is filed as secured, claiming a security interest in 900 shares of stock in Huckabee Auto Company, and no objection has been filed to her proof of claim.[1]

Claimant's $142,752.37 claim is based on a promissory note executed by Huckabee Auto Company on December 29, 1976 (relating back to July 31, 1976). This promissory note was part of a series of transactions which took place in 1976 which enabled Leo B. Huckabee, Jr. to become the sole stockholder of Huckabee Auto Company. The record discloses that claimant took no more than a passive role in the events that led to the execution of this promissory note, and from the record, the Court is unable to impute any inequitable, wrongful or fraudulent conduct to her.

The Debtors' plan proposes the following treatment for claimant's Class 4 claim:

The claims of Mrs. Miller are based on a certain promissory note dated July 31, 1976 from Huckabee Auto to Jane Huckabee Miller in the original principal amount of $147,647.31. The claimant asserts that this obligation is secured by a pledge of 900 shares of treasury stock in Huckabee Auto, 89 shares of treasury stock in Huck's Rambler, Inc., and 320 shares of treasury stock of Huckabee

---

1. The First National Bank and Trust Company of Macon, in its capacity as trustee of the trust of Mrs. Jane Huckabee Miller, created by Item VI of the will of Mrs. Marjorie Hinson Huckabee, deceased, has filed a proof of claim with the Court in the amount of $69,585.92. This claim, arising out of an estate in which Jane Huckabee Miller has an interest, will not be considered separately in this opinion because of counsel's merger of the two objections into the claim of Jane Huckabee Miller. Mrs. Miller's claim is evidenced by a proof of claim which is on file in the amount of $142,752.37.

Buick, Inc. It is the intention of the Debtors to pay Mrs. Miller in full settlement of her claim all amounts as finally determined and allowed by this Court after operation of 11 U.S.C. § 510(c) and § 1129(b), and the realization by Mrs. Miller of the "indubitable equivalent" of her allowed claim. Mrs. Miller shall no longer retain her lien on the treasury stock referred to hereinabove but shall relinquish her lien thereon.

The plan further classifies certain other claims of which the Court must take note in its consideration of claimant's objection, and these claims and their proposed treatment under the plan are as follows:

## 1. CLASS 2—CLAIM OF GENERAL MOTORS ACCEPTANCE CORPORATION (GMAC)—

Article IV of the plan provides the following treatment for this class:

The claims of GMAC will be treated in accordance with the terms and conditions of the Settlement Agreement. It is the intention of the Debtors that the Settlement Agreement be incorporated herein without modification. The claims of GMAC are divided into five classifications therein, and pursuant to the Settlement Agreement, the Debtors are required to remit payments from time to time on the various GMAC obligations. *The "GMAC Subordinated Secured Debt" as defined in the Settlement Agreement shall be treated in Class 7 hereunder.* (Emphasis added.)

## 2. CLASS 7—CLAIMS OF GENERAL UNSECURED CREDITORS—

Article IV of the plan provides the following treatment for this class:

(1) If the SBA loan is approved, the Debtors shall pay to the general unsecured creditors in this class, in full settlement of their claims, fifteen per cent (15%) of the allowed amount of each of their respective claims in cash on the effective date of the Plan.

(2) If the SBA loan is not approved, the Debtors will issue promissory notes in full settlement of the claims of creditors in Class 7 the terms of which shall provide for payment in five (5) equal and annual payments; the first payment will be 4% of the principal balance of each allowed claim and shall be made on July 1, 1981. Each note shall aggregate 20% of the allowed amount of each claim, and the initial and each successive installment shall be 4% of each allowed claim.

## 3. CLASS 13—THE CLAIMS AND INTERESTS OF LEO B. HUCKABEE, JR., CLAIMS AND INTERESTS OF HUCKABEE AUTO, HUCK'S RAMBLER COMPANY, INC., HUCKABEE BUICK, INC., SEVENTH SEVEN, INC. AND HUCKABEE PROPERTIES (THE RELATED ENTITIES)—

Article IV of the plan provides the following treatment for this class:

The interests and claims held by the Related Entities will be subordinated to the full amount of all allowed claims. Each Related Entity shall continue to retain his or its interest in any of the Related Entities or Debtors.

The Court notes the following language which is contained in the settlement agreement dated June 18, 1980, which is of record in this case, and which by reference is incorporated into Debtors' proposed plan of reorganization, and which language is as follows:

[1.01] (d) "GMAC Subordinated Secured Debt" refers to all other indebtedness of the Company to GMAC in the amount of $100,346.07 which arose from pre-filing obligations of the Company, except GMAC Floor Planning Loan No. 1.

. . . .

[2.03] (b) The Company agrees and acknowledges that the GMAC Subordinated Secured Debt in the amount of $100,346.07 will be secured by the property described in Exhibit "E".

. . . .

[2.06] (e) The Company agrees that the GMAC Subordinated Secured Debt will

be dealt with by the Company in the Plan and paid the same percentage at the same time as is provided for unsecured claims of the Company after which GMAC shall retain a secured claim for any balance owed, secured by a lien on any remaining collateral owned by the Company in which GMAC holds a security interest, which security interest shall Be Released upon payment of the GMAC Subordinated Secured Debt.

Settlement Agreement, June 18, 1980, *In re Huckabee Auto Co.,* Case No. 80–00151–Mac, file 2 (Bkrtcy.M.D.Ga.).

The record discloses that Huckabee Auto Company will not be receiving a loan from the Small Business Administration, but Debtors have presented evidence which discloses an alternative source of funding from which to make their 15 percent payment to Class 7 claims. This source is a loan in the amount of $100,000.00 from Mrs. Randall A. Huckabee.

Through its interaction with the settlement agreement, the plan proposes to treat the GMAC Subordinated Secured Debt in Class 7 as if it were a general unsecured claim, and to further treat this GMAC claim by allowing it to retain a security interest to secure the balance of the debt. This security interest is in both personal and real property owned by Debtors, and is to secure full payment of the balance of the GMAC Subordinated Secured Debt.

Claimant's Class 4 claim is impaired by Debtors' plan of reorganization, and claimant has voted to reject the plan.

## CONCLUSIONS OF LAW

This Court has jurisdiction to decide the objection which has been filed by claimant, and also has jurisdiction to determine the legal result of claimant's rejection of the plan of reorganization. 28 U.S.C. § 1471.

Claimant is an interested party and may object to the confirmation of Debtors' plan of reorganization. 11 U.S.C. § 1128(b).

Section 1129 of the Bankruptcy Code, 11 U.S.C. § 1129, lists the requirements that a plan must meet if it is to be confirmed by the Court, and the first requirement of that section is as follows: "(1) The plan complies with the applicable provisions of this chapter." 11 U.S.C. § 1129(a)(1).

This subsection requires that the plan must comply with the applicable provisions of Chapter 11 of the Bankruptcy Code. Section 1128(b) of Chapter 11, 11 U.S.C. § 1128(b), provides that a party in interest in a case under Chapter 11 may object to confirmation of the plan. When a party in interest objects, and the objection is sustained by the Court, the other requirements of Section 1129 need not be addressed by the Court because the plan is not confirmable. In the orderly handling of any Chapter 11 case, it is reasonable that the Court should require a debtor to overcome the objections of parties in interest before considering all of the technical requirements of Section 1129. This procedure provides for economy of judicial effort, and is a logical starting point for the Court's consideration of confirmation of Debtors' plan of reorganization.

Accordingly, the Court herein considers the objections filed by claimant.

Claimant's first three grounds for objection address the question of treatment of claims under this plan of reorganization, and in particular, claimant's objection is that the plan does not sufficiently describe the treatment she is to receive under the plan. Section 1123(a)(3) of the Bankruptcy Code, 11 U.S.C. § 1123(a)(3), requires a plan to specify the treatment which an impaired class of claims will receive under a plan.[2]

Admittedly, it is difficult for claimant to tell from Debtors' plan what she will re-

---

2. Debtors' plan provides for the following treatment of claimant's claim:

It is the intention of the Debtors to pay Mrs. Miller in full settlement of her claim all amounts as finally determined and allowed by this Court after operation of 11 U.S.C.

§ 510(c) and § 1129(b), and the realization by Mrs. Miller of the "indubitable equivalent" of her allowed claim. Mrs. Miller shall no longer retain her lien on the treasury stock referred to hereinabove but shall relinquish her lien thereon.

ceive if the plan is ultimately confirmed, but the question for the Court is whether Debtors' specification of treatment as to claimant is, as a matter of law, legally insufficient. If the specification is legally insufficient, then the requirement of Section 1123(a)(3) has not been met.

■ Consideration of this question must be made in conjunction with Section 1125 of the Bankruptcy Code, 11 U.S.C. § 1125, which requires a court-approved disclosure statement to be furnished to parties in interest before a debtor can solicit acceptances of a plan of reorganization. This section requires that sufficient information be contained in this disclosure statement for an affected claimant to make an informed decision on whether or not to accept the plan of reorganization. The Court here notes that Debtors' disclosure statement makes mention of how claimant is to be treated, and further notes that during this Court's hearings, which eventually led to approval of Debtors' Modified and Amended Disclosure Statement, the claimant made no objection to the specification of treatment provided for her claim. If she had a concern as to the mechanics of her treatment, it is logical and appropriate that this concern should have been voiced at some time prior to the actual hearing on confirmation.

■ The Court has carefully considered the specified treatment for claimant's claim in Debtors' plan of reorganization, and while finding that its operation is admittedly complex, the Court is unable to find that the specification is legally insufficient. Thus, the first three grounds of claimant's objection will be overruled.

Claimant's next ground of objection is that Debtors' classification of claims fails to group claims or interests which are substantially similar.

■ There is no requirement in the Bankruptcy Code that a plan of reorganization must class claims together, but there is a requirement that if claims are classed together, they must be substantially similar. 11 U.S.C. § 1122(a); 5 *Collier on Bankrupt-*

*cy* ¶ 1122.03[1][b] (15th ed. 1981). There is authority under the Bankruptcy Act that similar claims must be classed together in a plan of reorganization, *Scherk v. Newton* (*In re Rocky Mountain Fuel Co.*), 152 F.2d 747, 751 (10th Cir.1945); *Seidel v. Palisades-On-The-Desplaines* (*In re Palisades-On-The-Desplaines*), 89 F.2d 214, 217–18 (7th Cir. 1937), but there is no such requirement under the Bankruptcy Code. Thus, the fourth ground of objection must be overruled.

■ Claimant's fifth ground of objection to Debtors' plan of reorganization is that the plan fails to provide similar treatment for each claim or interest in a particular class. After careful consideration of this ground, the Court finds that it must be sustained.

Debtors, in their plan of reorganization, have placed general unsecured claims in Class 7 of their system of classification, and have placed what is identified as the "GMAC Subordinated Secured Debt" in Class 2. The separation of these claims in different classes is logical because the former are unsecured claims, and the latter is a secured claim.

Debtors, through their plan, propose to treat the GMAC Subordinated Secured Debt in Class 7, and thus, in effect, are classifying this secured claim in one class but treating it in another. Through its treatment in Class 7, the GMAC Subordinated Secured Debt would be paid 15 percent just as if it were an unsecured claim, but unlike the unsecured claims of Class 7, the GMAC claim is to have its remaining 85 percent paid as a secured claim. Thus, Debtors' plan proposes to pay the GMAC Subordinated Secured Debt in full, but to pay only 15 percent of unsecured claims.

Section 1123(a)(4) of the Bankruptcy Code provides as follows:

(a) A plan shall—

(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favor-

able treatment of such particular claim or interest;

11 U.S.C. § 1123(a)(4).

This section restates the cardinal principle of bankruptcy practice that claims within a class should all be treated equally. 5 *Collier on Bankruptcy* ¶ 1123.01[4] (15th ed. 1981). Arguably, since the GMAC Subordinated Secured Debt is classed within Class 2 and being treated equally with the other claims in that class, there is no violation of Section 1123(a)(4), but such an analysis by this Court would put form over substance. Debtors propose to treat the GMAC Subordinated Secured Debt in Class 7, and for this Court to allow that claim to be treated in Class 7 without requiring the equality of treatment within that class that is required by Section 1123(a)(4), would be for this Court to ignore its responsibilities as a court of equity. If a debtor, for whatever reason, elects to treat a claim within a class, then Section 1123(a)(4) requires equal treatment of all claims within that class. The only exception would be when a claimant that is being less favorably treated has agreed to such treatment.

In this case, Debtors seek to treat the GMAC Subordinated Secured Debt more favorably than other claims in Class 7, and the substantial number of rejections on file with the Court by Class 7 claimants evidences their disagreement with this treatment.[3]

Accordingly, this ground of the objection must be sustained.

■ Claimant's sixth ground of objection is that each class has not accepted the plan as is required by 11 U.S.C. § 1129(a)(8). This section requires that each class either accept the plan of reorganization or not be impaired by it. This is the one requirement of Section 1129(a) that is not mandatory for confirmation because Section 1129(b) permits confirmation notwithstanding failure to comply with subparagraph (8). 11 U.S.C. § 1129(b). 5 *Collier on Bankruptcy* ¶ 1129.-02[8] (15th ed. 1981). Section 1129(b) is

what is commonly referred to in bankruptcy practice as the "cram down" provision of Chapter 11. Since the provision of the Bankruptcy Code on cram down, when properly applied, removes the requirement of acceptance by an impaired class, there is no requirement that each class accept the plan, and this ground of claimant's objection must therefore be overruled.

The claimant's seventh ground of objection addresses itself to the feasibility of the debtors' plan of reorganization. Feasibility is a complex issue, and since other grounds of claimant's objection are being sustained, the Court need not reach the question of feasibility. The Court specifically reserves a ruling on this issue should it be necessary to proceedings within this Chapter 11 case.

The eighth ground of claimant's objection concerns the failure of Debtors' plan to meet the requirements of cram down. Although cram down is not normally considered by the Court until all requirements of subsection (a) of Section 1129 have been met (this is exclusive of 1129(a)(8) which cram down in effect replaces) the Court will herein consider cram down because of claimant's specific objection to it.

The cram down provisions of Chapter 11 of the Bankruptcy Code are found in Section 1129(b), which reads as follows:

> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.
>
> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

---

**3.** Debtors' counsel, at the confirmation hearing, reported to the Court that if the GMAC Subordinated Secured Debt is excluded from Class 7,

Class 7 has voted to reject the plan of reorganization.

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the lien securing such claims, whether the property subject to such lien is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the lien securing such claims, free and clear of such lien, with such lien to attach to the proceeds of such sale, and the treatment of such lien on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.

(C) With respect to a class of interests—

(i) the plan provides that each holder of an interest of such class receive or retain on account of such claim property of a value, as of the effective date of

the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, and the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

11 U.S.C. § 1129(b).

Claimant has filed a secured proof of claim with this Court in the amount of $142,752.37 claiming a security interest in 900 shares of treasury stock owned by Huckabee Auto Company. Debtors contend the 900 shares to be worthless, and counsel for claimant in his brief in support of the claimant's objection admits that for all practical purposes these shares are in fact worthless. Accepting this position of the parties, the Court will hereafter in this opinion consider claimant's claim to be unsecured.

The plan of reorganization contemplates utilization of Section 510(c) of the Bankruptcy Code, 11 U.S.C. § 510(c), to disallow or equitably subordinate claimant's claim to the payment of Class 7 claims.[4] The plan further proposes that claimant would relinquish her security interest in the 900 shares of stock. Claimant objects to this treatment, and contends that such treatment violates the terms of Section 1129(b).

The Court notes that Section 510(c) deals exclusively with equitable subordination, and makes no mention of disallowance. Subordination and disallowance are two distinct theories within the bankruptcy process because the former addresses the question of priority and participation, while the latter results in complete exclusion from participation. Subordination is an appropriate remedy for the Court in the exercise of its

---

4. Since Class 8 claims are legally the same as Class 7 claims, except that they have been classified in Class 8 pursuant to 11 U.S.C. § 1122(b) for administrative convenience, the Court need only discuss Class 7 because what is said about Class 7 would also be applicable to Class 8.

equitable powers, but disallowance is not. *Benjamin v. Diamond* (*In re Mobile Steel Co.*), 563 F.2d 692, 699 n. 10 (5th Cir.1977). Debtors have consistently throughout this case urged an exercise of the Court's equitable powers, and have filed no objection to claimant's proof of claim. Thus, claimant's claim, pursuant to 11 U.S.C. § 502, is deemed allowed, and the only issue properly before the Court is whether the claim of claimant should be subordinated.

If the Court declines to subordinate claimant's claim, then Debtors' plan of reorganization cannot be confirmed over claimant's rejection because impaired classes below claimant's Class 4 are to share under the plan. This would be a violation of Section 1129(b)(2)(B)(ii), and would render the plan nonconfirmable. The Court has carefully considered all of the evidence and the arguments of counsel, and is unable to find any conduct by claimant or at claimant's direction which would require subordination of her claim.[5] Still, there is an even more compelling reason why this ground of claimant's objection must be sustained, and that is because even if the Court subordinates claimant's claim as requested, the plan is not confirmable because it violates the provisions of cram down. The Court will hereafter assume subordination as requested.

Class 13 of Debtors' plan of reorganization contains the claims and interests of Leo B. Huckabee, Jr. and Huckabee Auto Company,[6] and proposes to treat each by allowing them to retain their respective interests. Leo B. Huckabee, Jr. is the sole stockholder of Huckabee Auto Company, and Huckabee Auto Company is the owner of all shares of stock in Huckabee Properties, Inc. Thus, Debtors' plan of reorganization proposes that Leo B. Huckabee, Jr. and Huckabee Auto Company retain their respective equity ownership interests in Debtors.

■ In summary, Debtors' plan of reorganization would subordinate claimant's claim to all other classes of claims, but leave claimant's claim in a higher priority position than the Class 13 interests. Claimant, under the plan, would take nothing, and Class 13 interest holders would retain their ownership interests. It is clear from a review of the legislative history of Section 510(c) that claims can be subordinated only to other claims, and interests only to other interests.

Section 1129(b)(2)(B)(ii) of the Bankruptcy Code, 11 U.S.C. § 1129(b)(2)(B)(ii), contains what is known in bankruptcy practice as the "absolute priority" rule, which simply stated is that a plan of reorganization may be confirmed notwithstanding the rejection of an impaired class if that class takes all that is left, and no class below it shares in the plan. Only if the rejecting class is paid in full may junior classes share under the plan. This principle, which is codified by Section 1129(b)(2)(B)(ii) of the Bankruptcy Code, has its origin in pre-Code law. See *Consolidated Rock Products Co. v. Du Bois,* 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1941); *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 (1939); *Northern Pac. Ry. v. Boyd,* 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931 (1913).

The following points are applicable to this Court's consideration of cram down:

First, section 1129(b) only applies if a class whose claims or interests are impaired does not accept the plan as required by section 1129(a)(8). If a class is not impaired, the class is deemed to have accepted the plan under section 1126(f). Second, the provisions of section 1129(b) may only be invoked by the proponent of a plan. Third, if the proponent of a plan seeks an order of confirmation under section 1129(b), the court must determine whether the plan satisfies the statutory requirements of section 1129(a) and (b) but does not have statutory authority to

---

**5.** Debtors have cited to the Court authority for their position that claimant's claim must, as a matter of law, be subordinated, but the Court need not decide that issue to reach a decision that is dispositive.

**6.** Other claims and interests are classified therein, but are not relevant to the issue before the Court.

alter the terms of the plan. Fourth, section 1129(b) is intended to protect dissident classes. The rights of members of a class to receive at least what would be received in a Chapter 7 liquidation is protected under section 1129(a)(7). Fifth, the statutory requirements that a plan not "discriminate" and that it be "fair and equitable" only apply to the dissident class or classes and do not require independant review of the treatment afforded a class which has accepted the plan and whose members will receive more under the plan than they would receive in a liquidation under Chapter 7 of the Code. Sixth, the court may confirm only one plan and in the event that several plans satisfy sections 1129(a) and (b), the court must determine which of the several plans should be confirmed.

5 *Collier on Bankruptcy* ¶ 1129.03[3][a] (15th ed. 1981).

With the foregoing considerations in mind, the Court will now consider whether claimant's objection to Debtors' proposed use of cram down should be sustained. Debtors contend that the Class 13 interest holders are receiving or retaining nothing under the plan because their interests are worthless, but such a contention is not sustainable upon careful analysis.

The retention of stock by the Class 13 interest holders carries with it control of the reorganized corporate entities with all of their potential for future growth. Debtors have presented little, if any, evidence as to the capitalization of prospective earnings from which the Court can determine the value of these Class 13 interests, but for Debtors to simply urge that the stock is worthless because Debtors are insolvent at the present time is an unrealistic approach which loses sight of the potential value of these reorganized entities. Cf. *In re Duplan Corp.,* 9 B.R. 921 (S.D.N.Y.1980).[7] In the case of *In re Landau Boat Co.,* 8 B.R. 436, 4 C.B.C.2d 207 (Bkrtcy.W.D.Mo.1981), the Court held that the retention of an equity interest, even though valueless, was

the retention of property. In the case at bar, the Court must find that the Class 13 interest holders are retaining property, and that since rejecting classes above Class 13 are not being paid in full, that the plan does not comply with the requirements of cram down. Accordingly, this ground of claimant's objection must be sustained.

Accordingly, the objection of claimant is sustained, and confirmation of Debtors' plan must be denied. This denial of confirmation of the only plan before the Court establishes ground for converting this case to a Chapter 7 liquidation or dismissing it. 11 U.S.C. § 1112(b). Therefore, the Court will set a hearing for the 20th day of October, 1981 at 9:30 a.m., and require Debtors, and any parties in interest wishing to be heard, to be and appear to show cause why additional time should be allowed for the filing of an alternate plan, and to show cause why this case should not be converted to Chapter 7 or dismissed.

---

7. It must be remembered that this consolidated Chapter 11 proceeding is designed to reorga-

nize two corporate entities which are separate and distinct from their equity holders.