**In re TRINA–DEE, INC., Debtor.**

**NAZARETH NATIONAL BANK AND TRUST COMPANY, Plaintiff,**

v.

**TRINA–DEE, INC., Defendant.**

**Bankruptcy No. 81–00009.**
**Adv. No. 81–1781.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 12, 1983.

---

Mark Refowich, Easton, Pa., for plaintiff.

David F. Dunn, Allentown, Pa., for defendant.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

■ The issue presently before the Court is whether we should grant relief from the automatic stay imposed by Section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a), to permit the mortgagee to foreclose on the debtor's property. We conclude that the mortgagee is entitled to such relief because we find that the debtor lacks equity in the property in question and that the property is not necessary to an effective reorganization.[1]

The debtor, Trina-Dee, Inc., filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on January 2, 1981. In other documents filed with the Court, the debtor indicated that since 1976 it has been engaged in the business of "recreational horse farming for profit" and "real estate investment".

The property in question in this case is an approximately ten acre parcel of land with improvements thereon located in Plainfield Township, Northampton County, Pennsylvania. This property is by far the debtor's largest asset. The debtor's business is located on this property, as is the residence of Louise Calantoni, the President and sole shareholder of the debtor. The improvements on this land consist primarily of a large Colonial style dwelling, a large horse barn that can house at least eight horses and which contains a riding ring, and a small four-stall horse barn.

The subject property is encumbered by two mortgages held by the plaintiff/mortgagee, Nazareth National Bank and Trust Company. As of November 17, 1982, the total indebtedness due the plaintiff by the debtor was $112,513.60, which included the substantial arrearages due the plaintiff under the terms of the mortgages. Presidential Commercial Corporation, which is not a party to the present action, holds two subsequent mortgages against the same property. The debtor's total indebtedness on these two mortgages was $53,781.95 as of November 17, 1982. In addition, as of November 17, 1982, the total of outstanding taxes due on the subject property was at least $11,956.17. Therefore, as of November 17, 1982, the total amount of encumbrances against the subject property was at least $178,251.72.

The plaintiff filed the instant complaint for relief from the automatic stay pursuant to Section 362(d) of the Bankruptcy Code, 11 U.S.C. § 362(d). Section 362(d) states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if-

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

Because we have concluded for the reasons hereinafter given that the plaintiff is entitled to relief from the automatic stay pursuant to § 362(d)(2), we need not address the "adequate protection" issue contained in § 362(d)(1).

In a proceeding for relief under § 362(d)(2), the plaintiff has the burden of proof on the issue of the debtor's equity in the property, while the debtor has the burden of proof on the issue of whether the property is necessary to an effective reorganization. 11 U.S.C. § 362(g).

■ We turn first to the issue of whether or not the debtor has equity in the subject property. It is important to note that in determining whether such equity exists, all encumbrances against the subject property are totalled, whether or not all of the lienholders have joined in the request for relief from the stay. *In re Mikole Developers, Inc.,* 14 B.R. 524 (Bkrtcy.E.D.Pa.1981); *In re Dallasta,* 7 B.R. 883 (Bkrtcy.E.D.Pa. 1980).

In order to meet its burden of proof on the equity issue, the plaintiff produced evidence showing that the various encumbrances against the subject property totalled at least $178,251.72, as indicated *supra.* Also, to attempt to establish the fair market value of the property, the plaintiff called a professional real estate appraiser to testify at the trial of this proceeding. The plaintiff's appraiser is a member of the American Institute of Real Estate Appraisers and the Society of Real Estate Appraisers, and has had more than twenty years of experience as a real estate appraiser, including considerable experience appraising rural properties such as that of the debtor. He has also testified as a real estate ap-

praiser in many federal and state courts. In addition to testifying at the trial, the plaintiff's appraiser prepared a thorough Appraisal Report of the subject property which was based, among other things, upon his personal inspection of the property. His Appraisal Report was admitted into evidence at the trial.

It was the opinion of the plaintiff's appraiser that the fair market value of the subject property was $150,000.00, based, in part, upon his belief that the highest and best use of the property is that of a rural residence rather than a business involving the raising, boarding and training of horses. Despite the horse-related facilities already existing as part of the property, the plaintiff's appraiser felt that a "horse farming" business could not for various reasons profitably be carried out on this property.

The debtor called its own appraiser to testify at the trial regarding the fair market value of the property. The debtor's appraiser has been a real estate broker since 1978. Unlike the plaintiff's appraiser, he is not a member of either the American Institute of Real Estate Appraisers or the Society of Real Estate Appraisers. Also, he has had much less real estate appraisal experience than has the plaintiff's appraiser.

The debtor's appraiser testified that he had made a personal inspection of the subject property. In his opinion, the highest and best use of the property is as an "equestrian training academy, horse training and boarding, that type of unit, associated, of course, with the main building being a private residential home." (Notes of Testimony, 1/19/82, pp. 60–61). Based largely upon this presumption, the debtor's appraiser expressed his opinion that the fair market value of the property is $185,337.00. However, he also testified that if the highest and best use of the property is that of a rural residence with horse facilities for personal, non-commercial, use only, the fair market value of the property is approximately $150,000.00, the same figure arrived at by the plaintiff's appraiser.

In evaluating these two appraisals, we first note that the plaintiff's appraiser has

considerably better qualifications and has had considerably more experience than the debtor's appraiser as an appraiser of real estate. We further note that the plaintiff's appraiser prepared the aforementioned thorough Appraisal Report of the subject property whereas the debtor's appraiser did not prepare a written report.

The critical difference in the two appraisals, however, involves the difference in opinion as to the highest and best use of the property. On this matter, we agree with the plaintiff's appraiser and find that the highest and best use is that of a rural residence with horse facilities for personal, non-commercial, use only. The plaintiff's appraiser advanced several persuasive reasons for his belief in this regard. Among them is the fact that there is only very limited and very difficult access to the subject property, thus limiting its value, particularly as a commercial property. Also, the relatively small size of the property (ten acres) makes it highly unlikely that a profitable horse farming business could be conducted on the property. Furthermore, there is no indication that the property has any history of income production as a horse farm or otherwise.

On the other hand, the debtor's appraiser did not provide adequate justification for his opinion that horse farming is the highest and best use of the property nor did he effectively negate any of the reasoning of the plaintiff's appraiser.

Therefore, we conclude that the fair market value of the subject property is $150,-000.00. In that, as discussed *supra,* the various encumbrances against the property total at least $178,251.72, we further conclude that the debtor has no equity in the property.

■ We next turn to the issue of whether or not the subject property is necessary to an effective reorganization of the debtor, for which the debtor has the burden of proof. 11 U.S.C. § 362(g). In order to prevail upon this issue, the debtor must show that the property sought to be foreclosed upon is necessary to effect a reorganization and that there is a reasonable probability of a successful rehabilitation within a reasonable time. *In re Gilece,* 7 B.R. 469, 472 (Bkrtcy.E.D.Pa.1980); *In re Terra Mar Associates,* 3 B.R. 462, 465–466 (Bkrtcy.D. Conn.1980).

In the present case, the debtor has failed to present any evidence to satisfy this requirement. At the trial, no person connected with the debtor corporation testified.[2] The only witness who testified on the debtor's behalf was the debtor's appraiser, whose appraisal testimony we have previously discussed. Thus, the debtor has offered no evidence whatsoever to show that its use of the subject property carries with it any reasonable likelihood of a successful business reorganization or rehabilitation over any period of time. Actually, even the word "rehabilitation" is a misnomer when applied to the debtor in that there is no indication anywhere in the record that the debtor has ever been a going concern or that the subject property has any history of income production as a horse farm or otherwise.

However, the debtor claims to have met its burden of proof on the effective reorganization issue in another manner. The debtor has filed three adversary proceedings in this Court regarding the subject property, seeking redress against various private parties, public officials and the Township of Plainfield for the debtor's non-receipt of a certain right-of-way through private property to the debtor's property when the debtor purchased the property from the previous owner.

The debtor appears to claim that a favorable outcome of one or more of the three adversary proceedings could lead to an effective reorganization of the debtor. However, the debtor has failed to present any evidence in the present case to show that said favorable outcome would be reasonably likely to lead to an effective reorganization. Nor do we have any reason to believe that

**2.** The debtor's counsel stated at the trial that he had been "unable to locate the management of the client corporation". (Notes of Testimony, 1/19/82, p. 87).

the granting of relief from the automatic stay in the present case and the plaintiff's potential foreclosure upon the subject property would prevent the debtor from continuing to pursue the three adversary proceedings.[3]

Therefore, we conclude that the subject property is not necessary to an effective reorganization of the debtor.

Having concluded that the debtor lacks equity in the subject property and that the property is not necessary to an effective reorganization of the debtor, we shall lift the automatic stay pursuant to 11 U.S.C. § 362(d)(2).

---

**3.** These three adversary proceedings have now been consolidated and are still pending in this Court.