In re B–K OF KANSAS, INC., Burger King Franchise Corporation, Debtor.

In re John Ercy WILKINSON, Debtor.

In re Marianne Anderson WILKINSON, Debtor.

Bankruptcy Nos. 85–20110 to 85–20112.

United States Bankruptcy Court, D. Kansas.

Jan. 26, 1987.

Andrew C. Hall, T. Joan Lawrence, Miami, Fla., J.B. King, Topeka, Kan., and Scott Alan Orth, Miami, Fla., for movant, Burger King Corp.

Dan E. Turner and Phillip L. Turner, Topeka, Kan., for debtors, John Ercy Wilkinson and Marianne Anderson Wilkinson.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter came for hearing on Burger King Corporation's Motion for Relief from Stay on June 24, 25, and 26, 1986. After hearing testimony of witnesses and arguments of counsel, the Court took the matter under advisement and ordered the parties to file proposed findings of fact and conclusions of law on or before July 18, 1986. Burger King filed its findings on July 23, 1986. The debtors were granted three extensions to file their findings, and after the fourth request, the Court denied any further extensions and is now ready to rule on this motion.

## FINDINGS OF FACT

1. On October 8, 1973, Armand R. Duplaise and Edward Prager entered into an agreement with Burger King Corporation to operate a Burger King restaurant (No. 1343) at 3690 S. Topeka Avenue, Topeka, Kansas. On April 26, 1974, Duplaise and Prager entered into a second agreement with Burger King Corporation to operate a second Burger King restaurant (No. 1415) at 1101 Kansas Avenue, Topeka, Kansas.

On July 17, 1974, Duplaise and Prager entered into a third agreement with Burger King Corporation to operate a Burger King restaurant (No. 1454) at 205 N. Topeka Boulevard, Topeka, Kansas. These three franchises had terms of fifteen years and were assigned to B–K of Kansas, Inc., a debtor.

2. Sometime prior to 1976, Prager hired John E. Wilkinson, debtor herein, as his attorney to represent him in a dispute with co-owner and co-franchiser, Duplaise, over operation of the restaurants. After Wilkinson's initial efforts at unraveling the underlying economic affairs of B–K of Kansas, Inc., Wilkinson acquired 26% of the common stock of the corporation. Prager retained a 51% interest and Cameron Miller acquired the balance of the stock. Subsequently, Wilkinson increased his ownership in B–K of Kansas, Inc. from 26% to 51% to, eventually, 100% by 1978.

3. Troubles arose between John Wilkinson and Burger King, Inc. in 1979 and continued into 1981; that is, the debtors materially defaulted on the franchise agreements throughout this period.

4. By April of 1982, the obligation of debtor to Burger King Corporation exceeded $160,000. On May 12, 1982, Burger King Corporation sent a notice of default. Under the franchise agreements, a failure to cure a default within 30 days constituted an automatic termination of the franchise relationship. Debtors failed to cure the default within the 30 days.

5. The debtors demanded arbitration. Burger King Corporation complied and instituted the arbitration proceedings by filing a petition with the American Arbitration Association in Florida.

6. On October 19, 1984, in a written report, the arbitration panel found in favor of Burger King Corporation on the termination issue and set the debt at $289,617.14 (exclusive of a $95,000 promissory note). The arbitrators found further, by a majority (two to one), that Burger King Corporation properly terminated the franchise agreements.

7. On January 23, 1985, the debtors filed a petition in the Eleventh Circuit Court of Dade County, Florida, to vacate the arbitrators' award.

8. On January 30, 1985, the debtors filed their voluntary petitions in this Court under Chapter 11 of Title 11 of the United States Code.

9. On March 10, 1986, Burger King Corporation moved this Court for relief from or modification of the automatic stay. An extended hearing was held on June 24, 25 & 26, 1986.

10. The debtors are continuing to operate the Burger King facilities in Topeka, and have not, to date, paid Burger King Corporation any money for use of the trade name and service marks during this bankruptcy, as required by their franchise agreement.

## CONCLUSIONS OF LAW

The sole issue before this Court is whether Burger King Corporation is entitled to relief from stay to pursue its franchise rights.

The parties have attempted to broaden the scope of the proceeding. The debtors have alleged throughout the case numerous matters which the Court finds immaterial. This Court elects only to resolve the issue at hand: should the automatic stay be lifted? The answer is yes.

Section 362(d) sets forth the basic grounds for relief from stay. The section states:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>>
>>> (A) the debtor does not have an equity in such property; and

>>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

Burger King is entitled to relief for both (1) "cause" and (2) lack of equity. The Court will address the grounds in reverse order.

1. *Lack of Equity and a Chance of Effective Reorganization Under Section 362(d)(2).*

■ Clearly the debtors do not have equity in the franchise rights. On May 12, 1982, Burger King Corporation, pursuant to its franchise agreements with the debtors, notified the debtors of substantial defaults under the agreements. The agreements provided the debtors with a 30–day period to "cure" the defaults. The period expired and the franchise agreements terminated automatically.

More importantly, the issues surrounding the termination have already been litigated in arbitration. The parties entered into a prolonged arbitration proceeding concerning the default and termination. On or about October 19, 1984, the arbitration panel found in favor of Burger King Corporation in the amount of $289,617.14. The panel further found by a majority vote, that Burger King Corporation properly terminated the franchise agreements. This Court accepts the arbitration award as final. As such, the debtors do not have equity in the franchise rights.

This Court notes that the debtor filed a petition to modify or vacate the arbitration award in the Eleventh Judicial Circuit Court of Dade County, Florida. Apparently, there is an issue about the timeliness of the petition. Certainly, there is an issue about the merit of the petition. However, these matters are best left to the reviewing state court. *See In re Frigitemp Corp.,* 8 B.R. 284 (S.D.N.Y.1981). For purpose of lifting the automatic stay, this Court finds that the debtors had no equity in the franchise rights after the arbitration panel found for Burger King Corporation.

■ The second element of the section 362(d)(2) ground for lifting the stay is that

the rights are not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2)(B). Courts have interpreted the clause to mean that there must not be a reasonable possibility of a successful reorganization within a reasonable time. *See In re Pacific Tuna Corp.*, 48 B.R. 74 (Bankr.W.D.Tex.1985); and *In re Trina-Dee, Inc.*, 26 B.R. 152 (Bankr.E.D.Pa.1983).

This Court does not perceive a reasonable possibility of a successful reorganization within a reasonable time. It is now 1987 and the Court does not see an end in sight. In any event, the debtors will never get a plan confirmed with the movant's consent. Under 11 U.S.C. § 1124, a class of claims or interests is considered impaired unless a plan leaves the holder's equitable rights unaltered. Any change in the movant's equitable rights in the trademarks and servicemarks would "impair" Burger King Corporation. Such a plan would not be confirmable over the objection of Burger King Corporation. *In re Madison Hotel Associates*, 29 B.R. 1003 (W.D.Wis.1983); *In re Huckabee Auto Co.*, 33 B.R. 132 (Bankr.M.D.Ga.1981).

In the final analysis, this Court lifts the automatic stay for the grounds stated in subsection 362(d)(2). The debtors lack equity in the franchise rights. In addition, this Court does not perceive any reasonable likelihood of an effective reorganization within a reasonable time.

### 2. *"For Cause" under § 362(d)(1).*

The Court also grants relief from the stay "for cause, including the lack of adequate protection ..." 11 U.S.C. § 362(d)(1).

■ First, Burger King Corporation is not adequately protected in this case. The debtors have continued to use the trademarks and service marks without paying Burger King Corporation. The arrearages on royalties and advertising are accumulating at an enormous rate. Furthermore, the property in this case, the use of trademarks and service marks, is of such a type that money may never adequately protect the movant. The movant's reputation to the general public is at stake.

■ Second, this Court finds "cause" including lack of adequate protection for lifting the stay. *See* 2 Collier on Bankruptcy ¶ 362.07[3] (15th ed. 1986) (Lack of adequate protection is not the sole ground for relief since section 362(d)(1) requires relief *"for cause,* including lack of adequate protection.")

This Court is also concerned about the effect of the alleged post-petition arreages of the monies owed to Burger King Corporation on the debtors' estate. In addition, many of the reasons espoused in the section 362(d)(2) discussion can be considered cause. For example, there is little chance of an effective reorganization in the near future.

In any event, this Court also lifts this stay "for cause, including lack of adequate protection." *See* 11 U.S.C. § 362(d)(1).

### 3. *Debtors' objections to the Motion for Relief.*

At the outset, the Court notes that the debtors failed to timely file proposed findings of fact and conclusions of law in this matter, even though the Court granted them three extensions in which to file (until January 5, 1987). The Court will, however, attempt to address the debtors' objections and arguments based upon statements made at the hearing and in other pleadings and memorandums.

■ The debtor first attacks the validity of the arbitration award. The debtors allege that: (1) The arbitrators exceeded their power by considering the termination issue; (2) the arbitrators committed procedural error by proceeding despite John Wilkinson's obvious mental disability; (3) Burger King Corporation obtained the award by fraud; and (4) the Court should set aside the award because of newly discovered evidence. As stated earlier, these questions are beyond the issue at hand. If proper, the debtors can try to argue in the state courts.

■ In addition, the debtors seemed to take the position that because they may

have a right to set-off the debt of Burger King Corporation (vis-a-vis a "counterclaim") in the future, the Court should maintain the stay. The argument is without merit. The filing for relief from stay is a defensive action only and not the assertion of a claim giving rise to counterclaims. *See* Bankruptcy Rule 4001(a); 2 Collier on Bankruptcy ¶ 362.08[3]; *Vastola v. Milks*, 14 B.R. 15 (W.D.N.Y.1981).

Finally, the debtors appear to argue the possibility of assuming executory contracts. This argument is also without merit. The franchise agreements terminated pre-petition. The Court finds there is no executory contract to assume.

IT IS THEREFORE, BY THE COURT, CONSIDERED AND ORDERED That Burger King Corporation's motion for relief from automatic stay be and the same is hereby sustained.