**In the Matter of William O. DAVENPORT, Debtor.**

**Bankruptcy No. 82–658–BK–T.**

United States Bankruptcy Court,
M.D.Florida,
Tampa Division.

Oct. 13, 1983.

See also, Bkrtcy., 29 B.R. 137; Bkrtcy., 34 B.R. 463.

William Davenport, Francis Cobb, Tampa, Fla., for debtor.

Shirley Arcuri, Tampa, Fla., for First Bank and Trust Co.

Jeffrey Warren, Tampa, Fla., for Bush, Ross et al.

ORDER ON MOTIONS FOR RELIEF FROM STAY AND ORDER IN CERTAIN ADVERSARY PROCEEDINGS ALSO INSTITUTED FOR THE PURPOSE OF OBTAINING RELIEF FROM STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case, initiated by William O. Davenport (the Debtor) and the matters under considera-tion are the rights of several creditors of the Debtor to proceed to liquidate a block of common stock held by them as collateral for debts in various amounts owed by the Debt-or to the creditors. The stock in question is the common stock of Key Energy Corpora-tion, a Florida corporation, which at one time was controlled by the Debtor. The procedural posture of the immediate mat-ters under consideration is somewhat con-fusing, due to the fact that some of the creditors sought the relief from the auto-matic stay imposed by Section 362 of the Bankruptcy Code by filing a complaint pri-or to August 1, 1983 which, of course, was the proper way to proceed. Some of the creditors sought relief by way of motion, which, of course, is again the proper way to proceed now, inasmuch as the Bankruptcy Rules which became effective August 1, 1983 now provide that litigation involving relief from the automatic stay is no longer an adversary proceeding but shall be presented by motion. Bankruptcy Rule 4001 et seq.

Even though, as noted, the method of proceeding to obtain relief from the auto-matic stay was presented in a different fashion, all of them present a common ground for relief and involve the same facts and law. For this reason, it was agreed by all creditors, with the exception of the Uni-versity State Bank that, although there was no formal order of consolidation entered in this cause, the request for relief from the stay shall be handled as a consolidated mat-ter and the order entered shall be binding on all parties, with the noted exception of the University State Bank. The creditors, who seek relief from the automatic stay and whose rights from the relief from the stay will be considered by this order, are the National Bank of Florida (NCNB) who presented its claim for relief by adversary proceeding (adversary proceeding # 83–399); a Motion for Rehearing on a previous-ly entered order which continued the auto-matic stay in adversary proceeding institut-ed by the Federal Deposit Insurance Corpo-ration, FDIC v. Davenport (adversary pro-ceeding # 83–506); a Motion for Relief from the Automatic Stay filed by the First

Bank and Trust Company, a Motion for Relief from Automatic Stay filed by AmSouth Bank, N.A., a Motion for Relief from Stay filed by Gulf Coast Bank of Pinellas; and a Motion for Relief from Stay filed by the law firm of Bush, Ross, Gardner, Warren and Rudy. Although American Bank of Merritt Island, who is also a creditor holding a certain amount of Key Energy stock as collateral, did not file a motion to lift the stay, counsel for American Bank of Merritt Island appeared at the hearing and participated in the proceeding. All these secured creditors seek relief from the automatic stay, as noted, pursuant to § 362(d)(2), although some also seek relief pursuant to § 362(d)(1).

The hearing was initially noticed to include the Debtor's Motion to Value Collateral for the purpose of determining the extent of the secured portion of the claims filed by the various creditors, as well as for the purpose of determining the value of collateral for the purposes of providing adequate protection, under § 362(d)(1), or for the purpose of considering the presence or lack of equity under § 362(d)(2). As the result of agreement of the parties, it was decided that the hearing would be limited to considering the valuation of the stock solely for the purpose of lifting or extending the automatic stay, and that a further hearing would be held, if needed, to value the stock, pursuant to § 506 of the Bankruptcy Code, i.e., to determine the amount of the secured claim. Inasmuch as all of the secured creditors seek relief under § 362(d)(2), the Court will first consider the issue of presence or lack of equity and the necessity of the subject stock to the Debtor's Chapter 11 reorganization efforts.

The stock at issue is common stock in Key Energy Corporation pledged by the Debtor as security for his obligations to various creditors. The stock is traded over the counter, but because it is legend stock, it is sold through private placements. The number of shares held by the various creditors is as follows: NCNB holds 200,000 shares; First Bank and Trust Company holds 100,000 shares; AmSouth Bank holds 273,-621 shares; Gulf Coast Bank holds 70,000 shares; the law firm of Bush, Ross, Gardner, Warren and Rudy holds 20,000 shares; FDIC holds 300,000 shares, which are at issue in this proceeding; and the American Bank of Merritt Island holds 100,000 shares.

The Debtor concedes that these secured creditors have possession of the subject stock and that the stock secures a debt which is owed.

On the date that the Debtor filed his Petition for Relief under Chapter 11 of the Bankruptcy Code, the stock traded at 1½ per share. There was a minimal trading activity in the stock during the pendency of the Chapter 11 case, although at one time it was traded close to $3.00 per share. On the date of the hearing, the stock traded at 1¾. There was evidence presented that over the past few months there has been a downward trend, and that there has been minimal trading considering the number of shares outstanding.

The Debtor has maintained through the pendency of his Chapter 11 case that, because he owns a substantial block of shares in Key Energy, the stock has a higher value than that which is reflected by prices bid or asked. While this contention initially had some merit because the stock held by the Debtor represented a substantial, if not controlling interest in Key Energy, this is no longer the case inasmuch as Key Energy has since increased the number of outstanding shares from 3.5 million to 8.3 million. It further appears from the record that shares of Key Energy sold in a block of two to three million shares, sold at a price substantially below the over the counter trading price or $.50 per share. In addition, it is without dispute that approximately 1.5 million shares of its preferred stock was transferred to the FDIC as part of a settlement unrelated to this Chapter 11 case. These preferred shares are convertible to common on a 1:1 ratio. Thus, if in fact, a substantial or controlling interest does enhance the value of a block of stock, the private placement and the settlement with FDIC consist-

ing of newly issued stock substantially diluted the Debtor's interest in Key Energy and, therefore, the Debtor's contention that the stock held as a block has a greater value, no longer has any merit. In the case at bar, there has been no evidence whatsoever the Debtor will be able to sell such a large block of Key Energy stock, let alone at the current trading price. In fact, the evidence is to the contrary. These are the undisputed facts which, according to the contention of the parties warrants the granting of the relief sought.

There is no question that a Debtor may fund a Plan of Reorganization through liquidation of some or all assets of the Debtor. Section 1123(a)(5)(D) of the Bankruptcy Code. The Debtor's proposed Chapter 11 Plan of Reorganization provides that the Plan will be funded by the proceeds of sale of Key Energy stock which the Debtor intends to liquidate by an orderly sale over the next two years. Property may be necessary to an effective Chapter 11 reorganization even though reorganization is to be accomplished through liquidation of assets. *Empire Enterprises, Inc. v. Koopmans (In re Koopmans),* 22 B.R. 395, 402 (Bkrtcy.D. Utah 1982). However, there must be a reasonable likelihood that the Debtor will, in fact, be able to successfully utilize the subject property and reorganize within a reasonable time. *Barclays Bank of New York, N.A. v. Saypol (In re Saypol),* 10 BCD (CRR) 1057, 1061, 31 B.R. 796 (Bkrtcy.S.D. N.Y.1983). A "mere financial pipe dream" is insufficient to meet the criterion of § 362(d)(2), *Frankford Trust Co. v. Dublin Properties (In re Dublin Properties),* 12 B.R. 77, 81 (Bkrtcy.E.D.Pa.1981). In the present instances it is unlikely that a sale, even if possible, would produce sufficient monies to satisfy all secured creditors in full, let alone produce sufficient monies to pay anything to unsecured creditors. Therefore, it is apparent that the Debtor has failed to meet his burden of proof under § 362(g) and that the Key Energy stock is necessary to an *effective* Chapter 11 reorganization (emphasis supplied).

This leaves for consideration the question of the Debtor's equity, or lack of it, in the subject stock held by each of the individual creditors. The First Bank and Trust holds 100,000 shares, securing a debt in the principal amount of $250,000; FDIC holds 300,000 shares of stock, securing a debt in the principal amount of $743,000. Therefore, this being the case, the FDIC and First Bank and Trust are entitled to relief from the automatic stay pursuant to § 362(d)(2). It is clear that the Debtor has no equity in the stock held by the First Bank and the FDIC even if the stock is valued at $1.75 per share.

Assuming for the purpose of determining the Debtor's equity in the stock that the stock is valued at 1¾'s as to all of the remaining secured creditors, except the University State Bank, it would appear, at first blush, that the Debtor has equity in the stock held by NCNB, AmSouth Bank and the law firm of Bush, Ross, Gardner, Warren and Rudy and Gulf Coast Bank. NCNB holds 200,000 shares securing a $200,000 debt; AmSouth holds 273,621 shares securing a $472,876 debt; the law firm of Bush, Ross, Gardner, Warren and Rudy holds 20,000 shares securing a $37,-420.75 debt; and Gulf Coast Bank holds 70,000 shares securing a $114,990 debt.

However, in valuing the subject stock, other factors must be taken into consideration in addition to the current over the counter trading price. There is substantial evidence indicating that the value of this stock is highly volatile, the trading activity is minimal, and the stock is a legend stock and cannot be marketed readily in large blocks. As noted earlier, two million shares were sold recently for $.50 per share which is substantially less than the current over the counter trading price. The evidence also indicates that the market for Key Energy stock is in a downward trend.

In light of these factors, it is apparent that the Key Energy stock held by remaining secured creditors cannot realistically be valued at 1¾'s, and it is worth substantially less than the current trading price. This being the case, the Debtor has no equity in the subject stock, and all the remaining

secured creditors are entitled to relief from the automatic stay pursuant to § 362(d)(2).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Relief from Stay filed by First Bank & Trust Company be, and the same hereby is, granted for the purpose of foreclosing its interest in the Key Energy Stock.