**In re Raymond G. HUTTON and Mildred A. Hutton, Debtors.**

**Bankruptcy No. 83–05484.**

United States Bankruptcy Court, D. North Dakota.

Dec. 11, 1984.

John G. Shaft, Grand Forks, N.D., for PCA.

Michael Williams, Grand Forks, N.D., for debtors.

Ralph Carter, Grand Forks, N.D., for Federal Land Bank and PCA.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Federal Land Bank of St. Paul (FLB) and Production Credit Association of Grand Forks (PCA) by joint Motion filed on May 8, 1984, seek relief from stay pursuant to section 362(d)(1) and (2) of the Bankruptcy Code. FLB seeks relief from stay as against real estate in which it holds a first mortgage. PCA seeks relief against the same real estate upon which it holds a second mortgage. By a separate Motion filed September 6, 1984, PCA additionally seeks relief from stay as to various items of personal property in which it has a security interest. The Debtors acknowledge that FLB and PCA hold valid mortgages in various parcels of real property but assert that the value of the property against which relief from stay is sought exceeds the indebtedness and serves as adequate protection. With respect to PCA's claim for relief, the Debtors assert that PCA's interest is additionally afforded adequate protection by other parcels of real property which are not subject to the instant Motion for relief from stay. It is the Debtors' further position that all of the real property is necessary to their reorganization efforts. The Motions were heard on November 5, 1984. After consideration of the evidence presented, the facts may be summarized as follows:

## FINDINGS OF FACT

The Debtor, Raymond G. Hutton, is a farmer having real property situated in Red Lake County, Minnesota; Grand Forks County, North Dakota; and Polk County, Minnesota. The only real estate against which relief from stay is sought is that property situated in Red Lake County, Minnesota, and Grand Forks County, North Dakota.

The Debtors own farm property situated in Sections 11, 14 and 15 of Township 154, Grand Forks County, and are vendees on land situated in Sections 22 and 27 of Township 154, Grand Forks County ("Collette Land"). The total Grand Forks acreage including that being purchased on a contract for deed is 448.8 acres. The farmstead is situated on Section 14 and consists of several dwellings, a garage, several sheds and a metal quonset.

The Debtors also own 240 acres situated in Sections 20 and 29 of Township 151, Red Lake County, Minnesota, and are purchas-

ers on three contracts for deed of property situated in Section 1, Township 150; Sections 18, 19, 20, 29 and 30 of Township 151, Polk County, Minnesota, totalling 987 acres. Relief from stay has not been sought against the Polk County property.

All of the tillable land in Grand Forks County has been leased to other farmers for 1985, and the Debtors have not farmed the Red Lake County land in 1984 nor have they farmed the Polk County land since 1981. Essentially all of the Debtors' farm machinery and equipment was sold at a public auction held in the fall of 1983. Only a few minor items remain.

The Debtors filed for relief under Chapter 11 of the Bankruptcy Code on September 23, 1983. The indebtedness owing to FLB as of September 23, 1983, is not in evidence. However, interest has continued to accrue at a per diem rate of $138.70 so that the indebtedness owing to FLB as of November 1, 1984, was $437,611.74. (As of December 1, 1984, additional interest has accrued of $4,161.00.) The indebtedness owing PCA as of the date of filing was $329,617.00 with interest continuing to accrue at a per diem rate of $107.46 bringing the outstanding indebtedness owing PCA to $378,037.00 as of November 1, 1984. (Interest accrued to December 1, 1984, is $3,223.80.) In addition, the Debtors owe real estate taxes on the Grand Forks County and Red Lake County property totalling approximately $8,452.98. The Debtors are also indebted to George Hutton in the sum of $13,000.00 which sum is secured by property in Grand Forks and Red Lake counties.

Federal Land Bank holds a first mortgage in all property owned by the Debtors in Grand Forks County, North Dakota, and in Red Lake County, Minnesota, including the vendees' interest in Sections 22 and 27 of Township 154. PCA holds a second mortgage on this property as well as holding an assignment of the Debtors' vendees' interest in the Polk County land. FLB has no interest in the Polk County land. The total remaining indebtedness on the three Polk County contracts for deed (as derived from the Debtors' July 19, 1984, disclosure statement) is $394,000.00. PCA also has a perfected security interest in the following items of personal property having the agreed-upon values:

| 1978 Chevrolet 4 × 4 | $ 2,500.00 |
| 1974 GMC Suburban | 800.00 |
| 1976 Winnebago | 10,000.00 |
| Brush disc 14' Towner | 4,000.00 |
| Field Scraper | 2,500.00 |
| Tractor and Mower | 1,500.00 |
| Yard Mower | 1,000.00 |
| Steam Cleaner | 1,350.00 |
| TOTAL | $23,650.00 |

1.

Substantial disagreement exists with respect to the value of the real property against which relief from stay is sought. An appraisal was done of the Grand Forks County and Red Lake County property by John Botsford, a recognized farm appraiser. No appraisal was conducted of the Polk County land although several individuals rendered opinions of its value. The Grand Forks County land is very productive but is susceptible to some flooding. The Debtor testified in his opinion the 400 tillable acres in Grand Forks County was worth $1,600.00 per acre and the farmstead was worth $180,000.00. James Gowan, a farmer with 30 years experience in the area, testified that Huttons' tillable acres in Grand Forks County were worth $1,300–$1,500 per acre with the farmstead worth an additional $75,000.00. Mr. Gowan acknowledged he had no appraisal experience. He placed substantial reliance on the per acre rental values. Botsford was the only witness who had substantial experience as a farm appraiser. He made an appraisal of the Huttons' Grand Forks land and Red Lake land in July 1984 in order to arrive at a fair market value. Reliance was placed upon five comparable sales for the Grand Forks County property and four comparables for the Red Lake County land. His appraisal report submitted as Exhibit 1 is very detailed regarding the methods used to arrive at a valuation. The tillable acres in Grand Forks County total 357.7 acres at an average per acre price of

$875.00. He also noted that the 91.1 acres of non-crop land were worth an average of $250.00 per acre. These values are low in comparison to the comparable sales of farmland in Grand Forks County. The comparables have a per acre value ranging from $1,236–$954.00. Mr. Botsford himself acknowledged the Grand Forks land was a good farm and very productive. He placed a total value of $383,000.00 on the 448 acres in Grand Forks County, including $44,000.00 estimated as the contributory value of the buildings on the farmstead.

The Court believes, based upon a review of Botsford's appraisal and coupled with the testimony of Mr. Gowan, that the Botsford per acre value is too low. The Court also, after reviewing the photos of the buildings on the farmstead, an area acknowledged by Botsford to be "a beautiful setting along the Turtle River", feels that $44,000.00 is too low for these improvements. The Court attributes a value of $1,000.00 per acre for the 357.7 tillable acres and $250.00 per acre for the 91.1 acres of non-crop land in Grand Forks County. In addition, the Court agrees with Gowan that the buildings contribute an additional $75,000.00 of valuation. This would give Huttons' Grand Forks land a total value of $455,475.00.

### 2.

Botsford noted that the Red Lake County land is marginal and placed a value of $275.00 per acre on 160 acres and $250.00 per acre on the remaining 80 acres for a total value of $62,000.00. The Debtor believed the Red Lake land was worth $700.00 per acre and elicited testimony from Marcel Rogalla, a commercial farm broker in Crookston, Minnesota. Rogalla has been in the business of farm sales for a number of years but has no training in appraisal work. Although not inspecting the Red Lake land nor making any comparisons he attributed a value of $600–$700 per acre to it. Botsford's comparables buttress his opinion as to the Red Lake land, and the Court accepts Mr. Botsford's opinion as the most accurate value. The Red Lake land is worth $62,000.00.

### 3.

Although a recent appraisal was done of the Grand Forks County and Red Lake County land, none was done of the Polk County land. Testimony was elicited from Rogalla regarding the Polk County land. Mr. Rogalla has sold farmland in the Polk County area, and some twenty years ago he farmed land fifteen miles north of Huttons' Polk acreage. It was his opinion that the Polk County land is presently worth between $600–$700 per acre. Ray Hutton himself testified that he believed the Polk County land was as productive as any other in the Red River Valley and that in his opinion the land was worth $700–$800 per acre. It must be noted, however, that in the Debtors' schedules submitted with his 1983 petition a value was placed on the Polk County land of only $400.00 per acre. There has been no testimony to suggest that the land values for Polk County farmland had doubled in value over 14 months. However, the Court must take judicial notice of the fact that Polk County, Minnesota, is adjacent to the Red River which bisects North Dakota and separates Grand Forks County on the west from Polk County, Minnesota, on the east. It does seem surprising to the Court that Red River bottom land in North Dakota would be worth $800–$1,000 per acre and yet similar land across the River would be worth only $400.00 per acre. Therefore, the Court does not believe that the $400.00 per acre estimate set out in Huttons' 1983 schedule is accurate. The only basis upon which the Court can arrive at an approximate value for the Polk County land is from the testimony of Mr. Hutton and Mr. Rogalla. Accordingly, the Court will place a per acre value of $600.00 per acre on Huttons' Polk County land for a total value of $542,850.00.

### CONCLUSIONS OF LAW

■ FLB and PCA seek relief under section 362 of the Bankruptcy Code. This section provides:

On request of a party in interest and after notice and a hearing, the court

*shall* grant relief from the stay provided under subsection (a) of this section such as by terminating, annulling, modifying, or conditioning such stay...

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if...

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d). Pursuant to the foregoing section, the Court must afford a creditor relief from stay if either of two alternatives are met: (1) for cause, including a lack of adequate protection, or (2) if the debtor has no equity in the subject property and the property is not necessary to an effective reorganization. Applicability of section 362(d)(1) will not be considered for, as discussed below, FLB and PCA have established a basis for relief under the alternative remedy of section 362(d)(2). The only burden of proof resting on a creditor seeking section 362(d)(2) relief is to establish lack of equity. The debtor has the affirmative burden of showing that the property is necessary to an effective reorganization. In determining whether the debtors have any equity in the property, all liens encumbering the property must be considered including those of creditors who may not be seeking relief from stay. If the aggregate sum of all liens exceeds the value of the property, then the first element of section 362(d)(2) is met and the court moves on to consideration of whether the property is nonetheless "necessary to an effective reorganization". The total indebtedness as of December 1, 1984, is $1,238,449.00 (including the sums outstanding on the Polk County contracts for deed). The total real estate values (including the value of the Polk County land) is $1,060,-325.00. Total personal property value is $23,650.00. Total valuation of all property is $1,083,975.00. This leaves a negative equity as of December 1, 1984, of $154,-474.00. The debt burden is increasing by $7,384.00 per month on the FLB and PCA indebtedness alone. The fact that PCA holds a security interest in the Polk County real estate does not afford it any adequate protection whatsoever in that the Debtors have no equity in that property as against the totality of the outstanding indebtedness. Furthermore, in Schedule B–1 of the Debtors' 1983 schedules, the Debtors have stated that their ability to consummate the contract for deed purchases on 587 acres of the Polk County land is "remote". Thus, the Court considers PCA's security in that property to be at considerable risk.

The term "necessary to an effective reorganization" has been the subject of considerable debate in the courts. On one extreme, it has been said to mean the total absence of any possibility of reorganization, yet on the other hand it has been said to mean a mere assertion by the debtor that the property is necessary to further the interests of the estate. Neither of these extremes have been acceptable to this Court. The term requires something more than a mere statement by the debtor to the effect that the property is necessary for a reorganization. *In re Boca Development Associates*, 21 B.R. 624 (Bankr.S.D. N.Y.1982); *In re Clark Technical Associates, Ltd.*, 9 B.R. 738 (Bankr.D.Conn.1981); *In re Kors, Inc.*, 11 B.R. 324 (Bankr.D.Vt. 1981). If all that were necessary to meet this burden were a bare assertion of necessity, virtually all property would be necessary, and relief under section 362(d)(2) would become amorphous. The standard of proof which has become most commonly accepted is that there be a reasonable probability of a successful rehabilitation within a reasonable time and that the property sought to be foreclosed be critical to that effort. *In re Saypol*, 31 B.R. 796 (Bankr. S.D.N.Y.1983); *In re Trina-Dee, Inc.*, 26 B.R. 152 (Bankr.E.D.Pa.1983). While this does not require proof by the debtor that rehabilitation is a certainty, it does require something more than a bare statement to that effect and something more than mere wishful speculation. It does not require the actual filing of a plan but does require a showing that there is a reasonable proba-

bility that a successful plan will be proposed within a reasonable time. A mere pipe dream is insufficient. *See Matter of Davenport*, 34 B.R. 460 (Bankr.M.D.Fla. 1983).

■ The evidence in this case establishes that at the present time the Debtors are without any farm equipment with which to effectively carry on a farming operation. The evidence further discloses that all of the real estate in question has been leased out by the Debtors and that the Red Lake land has grown up and needs cultivation. The evidence further discloses that real estate taxes are owing on the Grand Forks and the Red Lake County lands. This case has been pending since September 1983 without a plan having been confirmed. The Debtors have filed a Plan of Reorganization and Disclosure Statement on July 16, 1984, but the Disclosure Statement has met with substantial objections from the United States Trustee. The proposed Plan of Reorganization calls for a liquidation of all of the Minnesota farm property and 141 acres in Grand Forks County with the proceeds being used to pay the contract for deed vendors as well as FLB and PCA. In sum, success of the Debtors' proposed Plan of Reorganization rests in large part upon Hutton's hope that buyers will be found for the Minnesota and Grand Forks County land at a price sufficient to reduce the indebtedness to FLB and PCA—an indebtedness which continues to accrue at a rate in excess of $80,000.00 per year. As secured creditors, neither FLB or PCA are required to stand aside while the Debtors vainly search for a buyer. As stated in *In re Terra Mar Associates*, 3 B.R. 462 (Bankr.D.Conn.1980):

> The short of it is that the debtor is utilizing the ... stay, hoping that somewhere, someone will fund an arrangement or refinance the mortgage with the Plaintiff. This is entirely to slim a reed upon which the Court should exercise its discretion and keep the Plaintiff at bay while the debtors continue to pray.

From a complete review of the Disclosure Statement and the Debtors' proposed Plan,

from the hearing testimony, and the fact of the rapidly increasing indebtedness to FLB and PCA, it appears to the Court that there is no reasonable prospect of reorganization.

In view of the foregoing facts and discussion, the Debtors have no equity in the subject property and the property is not necessary to an effective reorganization. Accordingly, the automatic stay afforded by section 362 shall be lifted with respect to the real property situated in Grand Forks County, North Dakota, and Red Lake County, Minnesota, and Federal Land Bank and Production Credit Association shall be free to foreclose on such real property. Further, the automatic stay with regard to the items of personal property in which Production Credit Association claims a perfected security interest is also lifted.

IT IS SO ORDERED.