**In re Freddie Edwin ROSEY, Debtor.**

**Bankruptcy No. 84–00560–S–11.**

United States Bankruptcy Court,
W.D. Missouri, S.D.

Nov. 13, 1984.

---

Arnold Kort, Kansas City, Mo., for debtor.

Gary Clifford, El Dorado Springs, Mo., for creditors Kaye.

David Schroeder, Springfield, Mo., for creditors Borchers.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

In this case debtor owns, inter alia, a restaurant and motel in El Dorado Springs, Missouri. He purchased the property on October 26, 1983, from Charles W. Borchers and Sandra Faye Borchers, husband and wife. Debtor took title subject to four recorded Deeds of Trust. The face amount of the note secured by those Deeds of Trust is approximately $682,000 but the evidence indicates that some of the notes constitute refinancings and the total amount of the debt is probably somewhere in the range of $360,000 to $370,000. In his schedules debtor lists the obligations as disputed in the amount of $347,500.

Debtor operated the restaurant and motel until early January of 1984 when he closed it after encountering difficulties with the utility service and the processing of checks through the local bank. Debtor filed for relief under Chapter 11 on February 22, 1984. The Borchers filed a Motion for Relief from the Automatic Stay on March 23, 1984 alleging that debtor was in default on the obligations and that he had no reasonable prospects for reorganization. A few days later the Kayes and the Wilsons, holders of security interests in the real estate—two of the four Deeds of Trust—also filed Motions for Relief from the Stay. In their Motion they allege debtor was in default on the various notes in the sum of $33,500. They also allege that reorganization was not likely. Debtor responded to both Motions by general denial. A hearing was held on the Motions. The parties appeared in person and by counsel. Evidence was heard and the matter taken under advisement.

The language of Section 362(d) of the Code, Title 11, U.S.C., authorizes the Court to modify "a stay of an act against property" if there is no equity "and such property is not necessary to an effective reorganization". The evidence shows that the restaurant and motel were still closed at the time of the hearing and that debtor was having difficulty getting the property in condition to reopen it for business. He lacked substantial capital and was unable to pay the restaurant manager who was still, despite this non-payment, assisting in attempts to get the restaurant open. There were also difficulties with utility providers. The motel had boiler and plumbing problems and no attempt at the time of the hearing was being made to operate that property. The amount in default on the Deeds of Trust had about doubled since the filing of the petition.

The evidence shows that El Dorado Springs is a resort area with a small permanent population. The vacation period is from April through September with additional activity during the hunting season. Both the restaurant and motel had been closed for most of the summer season. The evidence shows that closed the property has a value of about $135,000. As an operating entity the business has a much higher value although movants' witness did not agree that, even as a going business, the property was worth the debt against it. Debtor testified that the property was worth about $350,000. One of the movants also testified that the property had a value in that range and that it had been able to earn sums of money to service that debt when he was operating it.

The restaurant is a large facility able to seat from 100 to 150 people. Movants'

witness testified that it was too large for the area a good part of the time. The evidence did indicate, however, that it could do substantial business at certain times of the year. There are other competing facilities, smaller in size, in the area. The motel is old and is more like tourist cabins of by-gone days rather than a modern facility. The testimony was that the motel did do business during the vacation and hunting seasons. Debtor testified that prior to closing he grossed in three months approximately $70,000. The evidence also showed that at least one payment was made on the debt obligations prior to the filing for relief.

Since the restaurant and motel have re-opened in late September of 1984, the weekly reports required by the Court show gross income in the range of $1,000 to $1,500 per week and a net loss of approximately $1,000. During that period no payments were made on the secured debt. The obligations required by the various notes totals approximately $3,300 per month. One of the notes also requires a principal payment of $21,000 in March of 1984. This payment has not been made. At this time it is apparent that the motel and restaurant do not generate sufficient sums of money to enable the debtor to make payments on the debt secured by the property.

It is possible, of course, in the process of reorganization to impair secured creditors and to pay them neither the full amount of the debt or at the interest rate prescribed in the debt obligations. Instead a debtor can pay only the value of the collateral with interest at some present market rate with only a small percentage of the unsecured debt being paid. In view of the evidence, that kind of payment plan is a distinct possibility here.

The payments called for under the various notes are amortized over twenty-five (25) to thirty (30) years. It would be reasonable, therefore, to conclude that a plan could be confirmed with payments being made over the same term. The Court finds, however, that the property does not have a value equal to the debt. Rather the Court finds that the property has a value in the range of $250,000 to $300,000. Some of the debt obligations call for interest at 9% and 10%. The present rate of prime is about 12%. The Court, therefore, analyzes the value of the property at those rates and finds that the monthly payments would range from $2,271 to $3,085. In order to service the debt at those values the business would have to throw off in excess of expenses sums ranging from about $25,000 to $36,000 on an annual basis.

The Court having concluded that debtor has no equity in the property, the question remains whether the property is necessary to an effective reorganization. Actually the question has to be asked backwards— can the debtor effectively reorganize while owning this property? Prior to filing debtor had a high gross income which was undocumented as to source. He testified that he had a substantial sum remaining after payment of expenses but was unable to account for its use. He made one note payment and a part of another. The weekly reports now being filed indicate no funds available for payment on the secured debt.

The debtor has the burden of proof on the issue of necessary for effective reorganization. Section 362(g)(2) of the Code.

"It is not enough for a debtor to argue that the automatic stay should continue because it needs the secured property in order to propose a reorganization ... The key word ... is effective; the property must be necessary to an effective reorganization. If all the debtor can offer at this time is high hopes without any financial prospects on the horizon to warrant a conclusion that a reorganization in the near future is likely, it cannot be said that the property is necessary to an 'effective' reorganization". *In re Clark Tech. Associates, Ltd.*, 9 B.R. 738, 740 (Bkrtcy.Conn.1981).

See to similar effect *LaJolla Mortgage Fund v. Rancho El Cajon Associates*, 18 B.R. 283 (Bkrtcy.S.D.Cal.1982), *In re Trina-Dee, Inc.*, 26 B.R. 152 (Bkrtcy.E.D.Pa.

1983) and *In re Hutton-Johnson Co., Inc.*, 6 B.R. 855 (Bkrtcy.S.D.N.Y.1980).

Here debtor owns a motel in another location and investment property in Kansas City in addition to the El Dorado Springs property. Using reorganization in the sense of rehabilitation, debtor could reorganize without this property as he has other income producing properties. Using reorganization in the sense of orderly liquidation, see *In re Koopmans*, 22 B.R. 395 (Bkrtcy.Utah 1982), there being no equity in the property, the estate would lose no asset of value to the general creditors if foreclosure were permitted.

One of the real problems in this case has been the fact that debtor has property in three scattered geographical locations and the successful operation of each requires personal attention. Obviously debtor cannot be in three places at once and there is no evidence that he has adequate staff to do the job for him. In addition debtor has had little experience in running either motels or restaurants. Prior to filing debtor had some success in operating these businesses. Detailed financial reports for that period are not available so that the Court could consider whether a successful operation is possible at any level of income. In addition, debtor is unable to account for a substantial part of the income earned at that time. Compounding the problem is the fact that from the time of filing until the time of the hearing, a period of some six (6) months, debtor made little determined effort to get the El Dorado Springs business into operation. He thus lost out on the season and caused the creditors, whose debts are essentially a pyramid in this case, to face significant financial difficulty. The evidence shows a certain lack of determination on debtor's part to solve his problems even when protected by the bankruptcy filing.

To determine that there can be an effective reorganization of this property the debtor must persuade the Court that the operation of the business will generate sufficient income to pay debt service. There is little evidence of such ability. There is also little evidence that debtor has the capital or the determination necessary to achieve that result. A filing in bankruptcy stays the actions of creditors for a time, but there are reasonable bounds to that period. The Court finds that debtor has had sufficient time to attempt to demonstrate that this property can be rehabilitated to produce income to result in an effective reorganization.

Nor does the presence of other property in this estate alter the outlook. All of the property is encumbered. None of it appears to produce such income in excess of debt service that would enable debtor to pay for the subject property with income from the general estate.

The Court finds that prospects for an effective reorganization are dim and therefore the property in El Dorado Springs is not necessary to that reorganization. The stay is lifted to allow the creditors to complete foreclosures of their interests as they appear and to take possession of the property.

In the event of appeal a supersedeas bond in the sum of $10,000 is required to stay this Order.