In re L & M PROPERTIES, INC., Debtor.

GENERAL MOTOR INNS, INC., Plaintiff,

v.

L & M PROPERTIES, INC., Defendant.

Bankruptcy No. 89–00220–RS.
Adv. No. 89–0229–RS.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

June 15, 1989.

William D. Bayliss, Browder, Russell, Morris & Butcher, P.C., Richmond, Va., for plaintiff.

Kevin R. Huennekens, Maloney, Yeatts, & Barr, P.C., Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court upon the motion of General Motor Inns, Inc. ("GMI") seeking relief from the automatic stay provided by 11 U.S.C. § 362 in order to foreclose under a deed of trust. GMI is a secured creditor of the debtor-in-possession ("L & M"), holding security interests in a number of real property leases ("the Property") under which the debtor is the lessee. The leased properties comprise a tract of land improved by a motel which L & M operates as its business.

Finding that L & M has no equity in the Property, and that the Property is not necessary for an effective reorganization, the Court will order the automatic stay lifted pursuant to 11 U.S.C. § 362(d)(2). In order to permit the debtor-in-possession the opportunity to market the property prior to foreclosure, however, the Court will provide that the termination of the stay will not be effective until 60 days after the entry of an order in conformity with this Memorandum Opinion.

## FINDINGS OF FACT

L & M filed a voluntary Chapter 11 petition on February 1, 1989, and upon that date began operating as a debtor in possession. As its business, L & M operates a motel located in Rocky Mount, North Carolina. This motel was purchased in December, 1983 by L & M's predecessor in interest, A.G.A. Limited Partnership ("AGA"), which bought the business from A.J. & R. Motor Inns, Inc. In purchasing the motel, L & M's predecessor gave A.J. & R. Motor Inns, Inc. a $725,000 note ("the Note") and a purchase money deed of trust. The Note was later transferred and assigned to GMI. Although no evidence was presented showing that L & M had assumed AGA's obligation under the Note, L & M did admit that GMI is one of its secured creditors and that L & M's failure to make payments under the Note constitutes a default.

The Note, dated December 29, 1983, provides for monthly payments of $6,904.39 beginning February 1, 1984. These monthly payments were to continue until the entire amount of principal and interest was paid, except that the note is due and payable in full on January 1, 1991.

The deed of trust securing the Note now held by GMI was properly recorded in the appropriate office in Nash County, North Carolina in December, 1983, and conveyed to the trustee the debtor's leasehold interest in several parcels of property upon which the motel sits. The parties agree that GMI's interest in these leases is subordinate to the interest of the lessors, who are not parties to these proceedings.

Prior to the filing of the petition in this case, the debtor was seriously in default under its obligations to GMI. Monthly payments, in the previously stated amount of $6,904.39, were not paid beginning May 1, 1988. As a result of L & M's failure to make required payments GMI accelerated the Note and made demand upon the debtor for payment in full. L & M did not honor this demand, and GMI instituted foreclosure proceedings. GMI's scheduled foreclosure sale, however, was cancelled due to the debtor's filing of the Chapter 11 petition.

At the hearings in this matter the debtor-in-possession admitted that it had made no payments to GMI for one year. Further, L & M stated that it did not intend to begin renewed payments under its obligation to GMI until May of 1990 at the earliest. Although the loan was called prior to bankruptcy, the Court also recognizes that L & M's Note will become due by its terms in January, 1991.

The parties agree that the Property is subject to a number of other liens, and that as a result of these encumbrances the debtor has no equity in the Property. Heritage Savings Bank ("Heritage") possesses a second deed of trust on the property, and at the time L & M filed its petition approximately $690,000 was owed on this obligation. In addition, since the case began the debtor has incurred a $100,000 liability under certain leases which provide furniture, carpet, and other equipment which the debtor uses to operate the motel. Fi-

nally, pursuant to 11 U.S.C. § 363 the debtor entered into an agreement with Heritage under which Heritage has provided a $100,000 working capital line of credit. As of the date of this hearing, the debtor had drawn approximately $40,000 of the funds available under this line of credit, and had used these monies to renovate the motel.

Shortly before the filing of the petition, and at the suggestion of Heritage, the debtor retained the services of Louis H. Salomonsky ("Salomonsky") and his company, Sky Management, Inc., to operate the motel business. Apparently, Heritage has utilized Salomonsky's services in workouts of other distressed motel properties. The parties agree that the business was in an extremely poor financial and physical condition when Salomonsky took over its operation, and prior to the commencement of the Chapter 11 proceedings he instituted a program of renovation of the facility.

After filing its petition the debtor-in-possession continued Salomonsky's employment and, for all intents, he has acted as the sole representative of the debtor. The Court notes that, although two of the debtor's officers and principal shareholders were present at the § 363 hearing on Heritage's line of credit, at the two hearings concerning relief from stay no officer or director of L & M appeared.

Under Salomonsky's management the debtor-in-possession began to rehabilitate the motel's physical plant. The roof, which had been leaking seriously, was repaired. Furniture, carpet and wall paper in most of the 93 rooms was replaced. Hallways were painted; air conditioners fixed. These renovations were effected using the Heritage line of credit and the equipment lease previously approved by the Court.

As stated above, GMI's security under its deed of trust comprises a number of ground leases on which the motel sits. One of these leases has slightly over 19 years remaining on its term, the other leases have approximately 24 years to run. None of the leases provides the lessee an option to renew at the end of their terms. The parties disagree sharply over the issue of whether the decline in value of the leases occasioned by the passage of time—and the concomitant move toward expiration—jeopardizes GMI's security interest in the Property.

The debtor's expert appraiser contended that the decline in value of the leases coincides with the decline in value of the physical plant of the motel. That is, the length of the ground lease terms effectively tracks the economic life of the motel property. Thus, he asserted that when the leases expire the motel will have little, if any, economic value. As such, GMI, as a secured party, is in no worse a position for having leases as its security than it would have been if its interest had instead been in the fee.

On the other hand, GMI's expert, whom the Court found to be more credible, testified that the value of the leases was declining over time, and declining more quickly than the value of the leased property itself. That is, at some point so few years will remain upon these leases—which do not contain renewal options—that they will become valueless as security for the debtor's obligations. GMI's expert contended that this time would arrive approximately nine years from the time of these proceedings when ten years remained on the primary lease.

At the hearings in this matter Salomonsky revealed, in the vaguest terms possible, that the debtor hoped to renovate the motel, improve its financial "track record," and thus find a purchaser or investor willing to take on the business. Salomonsky admitted that he might himself be a prospective buyer of the motel, but contended that he would have to wait and see how the business performed.

Absent the emergence of a purchaser, or a refinancing of the motel's debt structure, Salomonsky intimated that a possible strategy for reorganizing would be a plan which paid out to the debtor's secured creditors over an 18 year period. This intimated strategy was extremely sketchy, however, and Salomonsky asserted that it hinged upon a great improvement in the financial performance of the motel.

## CONCLUSIONS OF LAW

The Court notes that, although GMI asserts that "cause" for lifting the stay under § 362(d)(1) can be found in the debtor's failure to make any payments for one year prior to the hearing, and in its avowal to make no payments earlier than May of 1990, the Court finds it unnecessary to base its decision on that assertion. Rather, the Court predicates its grant of relief in this case on the provisions of § 362(d)(2). That section, of course, provides that "the court shall grant relief from the stay ... with respect to a stay of an act against property ... if the debtor does not have an equity in such property; and such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2).

The Court's inquiry is very narrowly focused in this matter. As noted above, the debtor concedes that it possesses no equity in the Property. Even the value suggested for the Property by the debtor's own expert was less than the total amount of indebtedness secured by the Property. And, of course, the Property, as the sole asset of the debtor's motel business, is by definition "necessary" to any imaginable reorganization of the debtor. Thus, the Court focuses its attention in this case principally upon the possibility for an effective reorganization of this debtor.

Section 362(g), of course, places the burden of proving all issues, save that of the debtor's equity, on the debtor. 11 U.S.C. § 362(g)(1), (2). To successfully defend a request for relief under § 362(d)(2) a debtor must prove that a reasonable likelihood exists that an effective reorganization can be achieved within a reasonable period of time. *Grundy National Bank v. Tandem Mining Corp.*, 754 F.2d 1436, 1440 (4th Cir.1985), rev'd on other grounds, *United Savings Assoc. v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). The debtor is not required, however, to demonstrate that it has actually proposed a plan of reorganization acceptable to its creditors. Rather, the debtor need show only that there is a reasonable probability that it will be able to propose a plan that will result in a successful reorganization.

"A reasonable probability cannot be grounded solely on speculation, however, and a 'mere financial pipe dream' is insufficient to meet the requirements of § 362(d)(2)." *In re Dublin Properties*, 12 B.R. 77, 81 (Bankr.E.D.Pa.1981). At a minimum, the debtor must provide the Court with a broad outline of how it intends to employ the rehabilitative mechanisms of the Code to effectuate a reorganization within a reasonable time period. *In re Diplomat Electronics Corp.*, 82 B.R. 688 (Bankr.S.D.N.Y.1988).

Bearing in mind that this test should be applied with some degree of liberality in the early stages of a Chapter 11 proceeding, the Court, nonetheless, is compelled to conclude that the debtor has not demonstrated a reasonable prospect for a successful reorganization within a reasonable time. Although this Court is reluctant to abort the debtor's nascent reorganization, it is required to do so given the record made by the parties at the hearings. At those hearings the debtor put on no evidence to provide the Court with even the barest outline of a possible plan.

Salomonsky's testimony before the Court concerning the debtor's plan for reorganization amounted to nothing more than an expression of hope that a buyer or investor may be found. As the court in *In re Groundhog Mountain Corporation* has stated:

> The short of it is that the debtor is utilizing the ... stay, hoping that somewhere, someone will fund an arrangement or refinance the mortgage with the plaintiff. This is entirely too slim a reed upon which this Court should exercise its discretion and keep the plaintiff at bay while the debtor continues to pray.

1 BCD 923 (Bankr.S.D.N.Y.1975). The debtor presented no evidence of any attempts to find a buyer for the business or to obtain new sources of capital. *In re Planned Systems, Inc.*, 78 B.R. 852, 867 (Bankr.S.D.Ohio 1987). Further, no credible income or profit projection or quantitative financial forecast was introduced by

the debtor. To determine that there can be an effective reorganization of the debtor's business the debtor must persuade the Court that the operation of the business will generate sufficient income to pay debt service. *In re Rosey*, 44 B.R. 186, 189 (Bankr.W.D.Mo.1984). *See also In re National Real Estate Limited Partnership II*, 87 B.R. 986 (Bankr.E.D.Wi.1988). The debtor has failed to so persuade this Court.

For the reasons set out above the Court will Order the automatic stay lifted to permit GMI to exercise its rights under its deed of trust.